99 So.2d 709 (1958)
Duncan MacGREGOR, Broker, T/A Duncan MacGregor, Inc., Appellant,
v.
FLORIDA REAL ESTATE COMMISSION and J.E. Hollenbeck, Sr., Morrison I. Taylor and Walter R. Hardin, as and constituting the members of the Florida Real Estate Commission, and Lynn M. Shaw, Appellees.
Supreme Court of Florida.
January 10, 1958.
Rehearing Denied February 5, 1958.
*710 Paty, Downey & Daves, West Palm Beach, for appellant.
Gaylord C. Kenyon, Orlando, for appellees.
Sam I. Silver of Pallot, Silver & Mulloy, Miami, as amicus curiae.
HARRIS, Circuit Judge.
It appears that on March 21, 1955, the Florida Real Estate Commission entered its order permitting its representative, Lynn M. Shaw, to file an information against the appellant, and thereafter and pursuant thereto (original information having been quashed on appeal to Circuit Court) on October 28, 1955, an amended information was filed charging appellant with misconduct and containing two counts.
Count 1, briefly, charged appellant with having accepted a listing from one Allard to negotiate the sale of property belonging to Allard, the listing having been restricted to the sale of such property to Christians only, and that appellant knowingly negotiated a sale of such property to a Jewish person not a Christian, and misrepresented to the said Allard that the purchaser was in fact a Christian and not of the Jewish faith, in order to obtain Allard's approval of the sale.
Count 2, briefly, charges the appellant in connection with the same transaction with having negotiated a sale to a purchaser who was then an employee of appellant as a real estate salesman, and the failure of appellant to disclose this fact to Allard.
On November 10, 1955, appellant filed his Motion to Quash the amended information with the Real Estate Commission, which motion was, on April 19, 1956, by the order of the commission, denied.
Appeal was taken to the Circuit Court of the 15th Judicial Circuit of the State of Florida and that court, on August 27, 1956, entered its order affirming the commission's denial of the Motion to Quash, from which order appeal to this court was duly taken; by order of this court on October 8, 1957, Sam I. Silver, was permitted to file a brief as Amicus Curiae.
In the brief and argument of appellant, and also the Amicus Curiae, an effort has been made to treat this case as one involving an alleged and unconstitutional and unenforceable religious discrimination, but we do not feel, from an examination of the facts as disclosed by the record, that such question has any proper place *711 in the decision upon this appeal and therefore such question is neither considered nor decided.
The information charges the appellant and defendant in the proceeding before the Real Estate Commission, with bad faith in the performance of his duty to his principal in negotiating a sale of real estate owned by the principal and listed with the appellant for negotiation of a sale, and seeks to discipline the appellant in connection with the matter.
Appellant contends that the conduct charged fails to constitute a cognizable offense under the regulatory statute and it is upon this point that this case is considered and decided.
Chapter 475, Florida Statutes, F.S.A. provides for the creation of the Florida Real Estate Commission and for licensing and regulation of the Real Estate Brokerage Profession.
Section 475.17 defines the qualifications of applicants for registration, the first two sentences of which read as follows:
"An applicant for registration who is a natural person shall be required to make it appear that he is twenty-one years of age, a citizen of the United States, honest, truthful, trustworthy, of good character, and that he bears a good reputation for fair dealing. An applicant for an active broker's registration or a salesman's registration, shall be required to make it appear that he is competent and qualified to make real estate transactions and conduct negotiations therefor, with safety to investors and to those with whom he may undertake a relationship of trust and confidence."
Section 475.25 defines the several varieties of misconduct for which a real estate broker, upon having been found guilty thereof, may be disciplined and provides:
(1) "(a) Been guilty of fraud, misrepresentation, concealment, false promises, false pretenses, dishonest dealing, trick, scheme or device, culpable negligence, or breach of trust in any business transaction, or has violated a duty imposed upon him by law or by the terms of a listing contract, written, oral, express or implied, in a real estate transaction; or has aided, assisted, or conspired with any other person engaged in any such misconduct and in furtherance thereof; or has formed an intent, design or scheme to engage in any such misconduct, and has committed an overt act in furtherance of such intent, design or scheme; and it shall be immaterial to the guilt of the registrant that the victim, or intended victim, of the misconduct has sustained no damage or loss, or the damage or loss has been settled and paid, after discovery of the misconduct, or whether such victim, or intended victim, thereof, was a customer or a person in confidential relation with the registrant, or was an unidentified member of the general public; or,"
In Ahern v. Florida Real Estate Commission ex rel. O'Kelley, 149 Fla. 706, 6 So.2d 857, 858, this court said; Sub-paragraph 5-858:
"The real estate business has become a highly specialized one and the real estate broker is now the confidant of the public in much the same manner as the lawyer and the banker. His relation to the public exacts the highest degree of trust and confidence and the law imposes on appellees the duty of enforcing its standards."
The employment of a real estate broker to bring about the sale or the purchase of land on behalf of such employer or principal is purely voluntary; and likewise, the acceptance of employment by the real estate broker to undertake the performance of any service for his employer or principal, is purely voluntary.
In the present instance Allard, the employer and principal, tendered a listing upon *712 his property with the restriction that it should be sold to a "Christian only", to the appellant, the real estate broker.
The broker was under no compulsion to accept such listing and if its terms did not meet with his approval, he was at liberty to refuse the same; or if having accepted the listing, he later decided the limitation was an improper one, he could have and should have resigned his agency in the premises. In such event this proceeding would never have been brought. But he took neither of these courses. He accepted the listing and then finding the situation not to his liking or perhaps not to his convenience, proceeded to circumvent the limitation or restriction, which was an original incident thereto, by misrepresenting, or, as the information charges, "falsely representing" to the principal that his proposed purchaser was in fact a Christian when he knew that such purchaser was in fact not an adherent of the Christian faith; thus inducing the principal to enter into a contract to sell his property to a person with whom the principal would not have voluntarily entered into such a contract. This conduct was the direct opposite of the word "truthful" used in the first sentence of Section 475.17 above quoted, and is the counterpart of the words "misrepresentation", "false pretenses" and "breach of trust" used in the first sentence of Subsection (1) (a) of Section 475.25 above quoted.
Counsel for appellant freely admits, as does the brief of the Amicus Curiae, that the owner of the property, Allard, had a perfect right to sell, or to refuse to sell, his property to anyone he might see fit, and that he had a legal right to include such a stipulation or restriction in the listing of the property. They urge, however, that under the case of Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161, such a listing contract as the one before us, constitutes a discrimination, which, while permissive in the making, is nevertheless unenforceable; and further urge that this proceeding amounts to an enforcement of such contract by its effort to punish the appellant for a breach thereof.
We do not view this proceeding as in any wise attempting to enforce the restriction contained in the listing, but rather as a proceeding to punish appellant for having accepted the confidential relationship of a brokerage agent to his principal, together with the trust thereby imposed upon him, and then having been admittedly guilty of bad faith in non-performance of the duty imposed upon him, and further having been admittedly guilty of deception of his principal in order to accomplish his design and purpose to violate his duty and breach the trust reposed in him.
Enforcement of a perhaps discriminatory contract is one thing; punishment of admitted breach of trust, bad faith, deception, and infidelity to his known duty is quite another.
Count 2 of the information charges failure of the appellant to disclose to his principal the fact that the purchaser in the negotiated sale was a real estate salesman employed by the appellant in his brokerage office. We feel that in the relationship of a real estate broker to his principal, he, the appellant, was under the duty of informing his principal of any circumstance that might reasonably be expected to influence the complete loyalty of the agent to the interest of his principal, or that might reasonably be expected to influence his principal in the negotiation. The fact that the purchaser, a person with whom the broker was under an obligation to deal at arms length, yet fairly, in the interest of his principal, was an employee, as a real estate salesman in his (the broker's) own office, was a circumstance of which the principal should have been informed.
Appellant also contends that there can be no action for fraud or other misconduct without a showing of damages. If the action be one for damages such contention is, of course, the general rule, but *713 this is an action not for damages but penal in its nature, for alleged wrongdoing. Beyond this the statute distinctly provides that a real estate broker may be punished for misconduct without the showing of actual damage. This phase of the statute is highly salutary for the very simple and well known reason that often the failure of a broker to fulfill his duty to the principal results in a situation where no actual damage can be proven or where such damages may be speculative.
Appellant also contends that in this instance the principal ratified the conduct of the appellant in closing the transaction and accepting payment for his property. Ratification of an unauthorized act, if ever to be considered effective in a case of this nature, must have occurred at a time when the principal was fully informed of all pertinent facts, and enjoyed a free and unhampered choice of approval, or disapproval. The information does not show that the principal ratified the acts of the appellant, if at all, under such circumstances.
The order of the court below is affirmed.
TERRELL, C.J., and THOMAS, ROBERTS and DREW, JJ., concur.