105 So.2d 186 (1958)
William E. CHISMAN, Jr., et al., Appellants,
v.
E.B. MOYLAN, Jr., et al., Appellees.
No. 430.
District Court of Appeal of Florida. Second District.
September 10, 1958.
*187 Henderson, Franklin, Starnes & Holt, Fort Myers, for appellants.
Treadwell & Treadwell, Arcadia, for appellees.
KANNER, Chief Judge.
This is an appeal in chancery from final decree of the chancellor dismissing appellants' suit wherein they sought certain relief involving employer and broker relationship in a real estate transaction.
There is no need to give a detailed recital of the facts of the case. It may be said that the appellants, nonresidents of the State of Florida, were owners of one hundred sixty acres of land situated in Lee County. Their relationship with one another is that of brothers and sisters, and the appellant, William E. Chisman, Jr., acted on behalf of all the appellants. He is an active realtor-broker in the State of North Dakota. The appellee, E.B. Moylan, Jr., is an active realtor-broker with his office of business in the City of Miami.
The negotiations for the sale of the real property involved, from inception to consummation, were between the appellant, W.E. Chisman, Jr., and the appellee, E.B. Moylan, Jr. The property had been listed with appellee at a price of $56,000 with the allowance of a ten per cent broker's commission. There had been correspondence between appellant Chisman and appellee Moylan about the listing of the property and the terms of sale. Moylan, following such correspondence, communicated by telephone with Chisman, out of which conversation developed the agreement that the property be sold for $48,000 with a commission fee of ten per cent to Moylan. The deposit receipt agreement prepared by Moylan and executed by appellants named Patricia Mayer as the purchaser. Prior to the execution of this agreement, Chisman had obtained the services of a reputable realtor in Fort Myers to make an appraisal of the property, and from this report, he had listed the property for the indicated $56,000.
Appellants, to support their case, rely upon the oral testimony of William E. Chisman, Jr., letters of correspondence, and certain instruments connected with the transfer and sale of the property. Appellees, on their behalf, offered the testimony of the appellee, E.B. Moylan, Jr., and several other witnesses.
The case was heard by the chancellor upon the charge of breach of fiduciary duty by Moylan as the broker to his employers, the appellants. One Henry E. Wolff was a defendant, charged with wrongdoing in connection with the transaction along with Moylan, but was upon stipulation dismissed as a party.
The position of the appellants is that Moylan told Chisman in their telephone conversation that he had a purchaser for the property at a price of $48,000, that he *188 did not name the purchaser, nor did he mention a syndicate; that Moylan told him the offer would have to be acted upon right away; and in answer to the question as to whether this was the best price he could get, Moylan answered that it was. Relying upon this assurance, Chisman agreed to sell the property for $48,000.00. Chisman testified that he did not deal with Moylan as a purchaser, that the deposit receipt showed the name of Patricia Mayer as the purchaser and that it later developed she was the secretary of Moylan, that he knew nothing about any re-sale of the property, and that he would not have gone through with the transaction with Moylan had he known it was to be sold by Moylan as purchaser for a large profit. Testimony indicated that Moylan re-sold the property to a syndicate organized by one Wolff for $80,000 with a $16,000 profit to Moylan. Chisman admitted and it was also alleged in the complaint that Moylan told him he was going to invest his commission in the purchase.
Against this, Moylan testified that he, during the telephone conversation, informed Chisman he was organizing a syndicate for purchase of the land; that Patricia Mayer appeared as purchaser in the deposit receipt because it was customary in formation of syndicates to use an outsider for the convenience of the members; that Chisman learned prior to the consummation of the transaction that Patricia Mayer was his, Moylan's secretary; that Chisman was informed of his individual interest when the original deed naming Moylan as grantee-trustee was forwarded to Chisman; and that when he met Chisman at Fort Myers he told him that he individually was purchasing the property and that the reason the transaction could not be closed the following day was because the parties to whom Moylan was selling the land would not furnish the money until the following week. There was also supporting testimony that Moylan had informed Chisman that he was individually purchasing the property.
It is the contention of the appellants that the testimony and documentary evidence prove that Moylan did not disclose his status as purchaser to his principals and that, therefore, the final decree was inconsistent with the rule of law that a broker who buys from his principal without disclosing to him his status as purchaser must forfeit his commission and account to his principal for profits. Appellees agree upon this principle of law, so there is no dispute between the parties as to the basic law to be applied, but the dispute centers upon the evidence as it may be applied to the legal principle enunciated. Thus the evidence for the appellants was to the effect that the appellee-broker did not make a full and fair disclosure of his status as an individual purchaser, while the contrary position is taken by appellees through their evidence.
We feel that it is not amiss to stress the obligation reposed in a real estate broker to his principal or employer. Florida is a state which has gained wide renown because of its climatic advantages and its unusual potentialities. So it is, this state has been experiencing a fabulous era of real estate activity, oftentimes with rapid transfer of property from one person to another. The broker-realtor is peculiarly favored in his profession in Florida because of comprehensive statutory provisions governing the qualifications of those who desire to engage in this pursuit. He is looked upon as one possessing the high standards prescribed by such provisions. Under these, he must pass an examination given by the Real Estate Commission before he can be registered to engage in business as a broker. He must be a citizen of the United States, must possess the requisites of honesty, truthfulness, trustworthiness, and good character; and he must bear a good reputation for fair dealing. Not only is this true, but regulatory power is reposed in the Real Estate Commission to maintain these standards through suspension or revocation of his registration for wrongful or improper conduct. See *189 Real Estate License Law, sections 475.17, 475.18, 475.25, and 475.42, Florida Statutes, F.S.A.
The Supreme Court of Florida has indicated the high standard demanded of a broker as being comparable to that of a lawyer or a banker in that his relation to the public exacts the highest degree of trust and confidence. Ahern v. Florida Real Estate Commission, 1942, 149 Fla. 706, 6 So.2d 857. Because of the close relationship which calls for trust and confidence, the broker must act in good faith and with loyalty toward his principal. Under this fiduciary relationship he can neither acquire an interest nor make a profit in a transaction in which he is employed unless his principal knows and gives his consent or acquiescence. A broker has imposed upon him during the period of such relationship with his principal the legal obligation to inform him with fairness, promptness, and completeness concerning all facts within his knowledge which are or may be material to the situation in connection with which he is employed. See Van Woy v. Willis, 1943, 153 Fla. 189, 14 So.2d 185.
Mr. Chief Justice Terrell, in the case of Quinn v. Phipps, 1927, 93 Fla. 805, 113 So. 419, 54 A.L.R. 1173, speaking for the Supreme Court in his own impressive style, has voiced the duty owed by a broker to his principal in words through which no one who can read will be under misapprehension as to this duty, quoting from, 113 So. at page 425:
"The real estate business is not an avenue by which one may practice the tricks of his trade or prey on the innocent and unsuspecting purchaser, nor is it a cloak to cover fraud and deception, or a means for designing persons to short-circuit those who would deal squarely and in good faith. It is indeed a highly respectable business or profession; its ethics are well defined and presumed to be known to those who patronize or engage in that business. No business known to modern society has a longer or more respectable history. Real estate is a primary security for credit in all the civilized countries of the earth, and the real estate broker in our times, and long has been, the medium through which annually many millions of dollars in earnings and savings are secured or invested. He is the agent of his principal in every sense, and, when that relation is undertaken, a fiduciary relation is created which bars the agent from becoming interested in the business or property antagonistic to his principal without his knowledge or consent. Every man, in other words, to whom a business is intrusted by another, has a trust to perform; and every man is a trustee whose business is to advise concerning or to operate the business of another."
What has here been said as it concerns the duty incumbent upon a broker to his principal is nothing new, but constitutes an axiomatic truth which adverts farther back than contemporary law. It flows from the highest and most everlasting authority, the Holy Writ. There the law of fairness and the ethics of man's conduct with man is given in incomparable clarity and purity through the admonition of the Tenth Commandment. "Thou shalt not covet" and the Golden Rule, "Therefore all things whatsoever ye would that men should do to you, de ye even so to them: for this is the law and the prophets."
It should be remembered, and it should be heeded by the broker, that whenever he violates or betrays the confidence reposed in him by his employer, a remedy will be found and relief will be granted to the injured person. See Florida Law and Practice, Brokers and Brokerage, Vol. 3, section 5, p. 323. Neither a judgment nor a decree, however, should be entered in favor of an employer or a principal who complains that he has been injured by breach of duty by a broker where the complaint appears to be founded on conjecture, suspicion, or speculation.
*190 The witnesses were all before the chancellor who personally heard the testimony and the argument of counsel. He found in favor of the appellees. This court, therefore, is confronted with the old and long established rule of law that where the trial judge hears the testimony every presumption favors the correctness of his judgment, and he who complains of error must make it clearly appear since an appellate court will not overturn the judgment of the trial judge unless his findings are clearly against the weight of the evidence. Appellants have not met this test. The evidence is adequate to sustain the chancellor's determination that the broker did not commit a breach of duty owed to his principals.
Accordingly, the ruling of the chancellor is hereby affirmed.
SHANNON, J., and SEBRING, HAROLD L., Associate Judge, concur.