291 So.2d 217 (1974)
L & N GROVE, INC., et al., Appellants,
v.
Robert L. CHAPMAN, Jr., et al., Appellees.
No. 72-972.
District Court of Appeal of Florida, Second District.
March 6, 1974.
Rehearing Denied April 3, 1974.
Harlan Tuck of Giles, Hedrick & Robinson, Orlando, and Thomas C. MacDonald, Jr., of Shackleford, Farrior, Stallings & Evans, Tampa, for appellants.
Gregory A. Presnell, David J. Fuller, and George T. Eidson, Jr., of Akerman, Senterfitt, Eidson & Wharton, Orlando, for appellees.
BOARDMAN, Judge.
Appellants/defendants, Paul L. Curtis and his wife and L & N Grove, Inc. (hereinafter Curtis) seeks this timely review of *218 an adverse final judgment of the trial judge in which Curtis was declared to be constructive trustee of the real property in question for appellees/plaintiffs, Robert L. Chapman, Jr., et al. (hereinafter Chapman).
The second amended complaint was filed by Chapman on November 5, 1970, to rescind the contract and deed and to impose a constructive trust on the property in favor of Chapman, alleging therein, interalia, that Curtis was the real estate broker for Chapman and that he breached the fiduciary relationship by failing to disclose certain material facts, principally the impact of Walt Disney World on the value of the property involved here.
The basic facts are not in serious dispute. During the summer of 1966 Curtis, who was an active real estate broker with offices in Orlando, contacted Chapman concerning the purchase of a 10-acre tract of land located in Lake County and legally described as:
That part West of U.S. #27 of the South Half of the NE 1/4 of the SE 1/4 of Section 35, Township 24 South Range 26 East, less the northerly 15 feet thereof, being 10 acres more or less.
The property is situate north of and contiguous to a 22-acre tract that Curtis had purchased previously. Both parcels of land are located on U.S. Highway 27 near what was designated as State Road # 530, now U.S. Highway 192.
Chapman is also a real estate broker with offices in St. Petersburg and was a member of the partnership that owned the subject property and spokesman for the partnership in this transaction.
After a period of negotiations between the parties concerning the purchase of the real property, on or about August 1, 1966, an agreement was reached and Chapman agreed, after submitting Curtis' offer to the other members of the partnership, to sell the land involved to Curtis. The said agreement was confirmed by letter dated August 3, 1966, from Curtis to Dr. Pollard, a member of the partnership, with copy of said letter being mailed to Chapman. In addition, the letter advised that Curtis was acting "... as a Broker and a principal and would look to [his] group for a commission compensation." The contract for sale and purchase of the land was subsequently prepared and, in due course, executed by Chapman on August 23, 1966, and by Curtis on August 16, 1966. We call attention at this point to the fact that the buyer designated in the contract was Paul L. Curtis, or assigns.
The purchase price agreed upon was $47,500, which appears to have been one and one half times the then market value of the land for grove purposes. The contract provided that Chapman would maintain the grove and be entitled to the fruit crop under the conditions set forth in "SCHEDULE `A'" which was attached to the said contract.
In August, 1966, Curtis had formed L & N Grove, Inc., with one other person named Odell Warren, each owning 50% of the corporation. The corporation was organized for the purpose of acquiring title to the real property involved here and the 22-acre tract of land referred to above. The corporation was dissolved on August 20, 1970. The warranty deed, mortgage and note were recorded among the public records of Lake County on December 14, 1966. L & N Grove, Inc. was the grantee named in the deed. The mortgage and note were signed by Curtis as president of the corporation.
The complete terms and conditions of the sale are not necessarily pertinent. We mention that the mortgage was payable annually, covering a period of seven years. The mortgage payments due in June of 1967, 1968, 1969, and 1970, were paid to Chapman or his assignee. The payment due in June of 1971 was refused by Chapman's assignee.
*219 This is the third appearance of this cause before this court.[1] This appeal followed from entry of the final judgment.
It is, of course, necessary to prove the existence of a constructive trust by clear and convincing evidence. Carberry v. Foley, Fla.App.3rd, 1968, 213 So.2d 635. The doctrine of constructive trust is well established in Florida law and the courts of this state will impose the same where "... through actual fraud, abuse of confidence reposed and accepted, or through other questionable means gains something for himself which in equity and good conscience he should not be permitted to hold... ." Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 422 (1927). We also are aware that it is not within the province of this court to substitute its judgment for that of the trier of the facts unless the record clearly reflects that the findings and conclusions by the trial court are erroneous. Old Equity Life Insurance Co. v. Levenson, Fla.App.3rd, 1965, 177 So.2d 50; In re Estate of Hobein, Fla.App.1st, 1970, 238 So.2d 497; Griffith Services, Inc. v. Walter Kidde Constructors, Inc., Fla.App.1st, 1972, 262 So.2d 240. Against this background of general and accepted principles, we turn then to the particular situation presented in the case sub judice.
We have carefully considered the records, briefs, the authorities cited and discussed therein and arguments of respective counsel and conclude, for reasons delineated hereinafter, that reversible error has been demonstrated.
The trial court made a finding of fact in the final judgment as follows:
It is beyond question that Paul Curtis had knowledge of the impact which Walt Disney World would have on the value of this property... .
The trial court further found that Curtis failed to disclose that fact to Chapman. This is the finding of fact that has caused us great concern. We submit that after many readings of the record this finding of fact is not supported by substantial competent evidence.
The central and perhaps the sole question for our decision is what inside information does the record disclose that Curtis had that he did not disclose to Chapman and that he had a duty to disclose to him. There is not a scintilla of evidence in the record that we have been able to find that shows Curtis knew in 1966 what effect the Disney project would have on the value of the property. It is, of course, Chapman's contention that Curtis knew said property was immediately adjacent to the proposed widening and reconstruction of U.S. Highway 27 and that a cloverleaf exchange was to be constructed on said highway with its intersection with State Road #530.
In 1966 it is extremely doubtful that anyone knew if Walt Disney World would ever be developed into a reality. It was only on the drawing boards at that particular time. There can be no serious doubt that the Walt Disney World project was announced sometime in the fall of 1965, many months prior to the sale of the property involved here. Perhaps it is not significant that Curtis testified that the Disney announcement was the biggest announcement in the history of Florida real estate and resounded around the world. *220 We believe it highly plausible and reasonable to glean from the record that Chapman likewise had this knowledge, or by the exercise of reasonable diligence could have acquired it. We believe the announcement was one of general public knowledge. The alleged information that Curtis is charged with having withheld was speculative in nature and clearly available to the parties involved here.
It was not until 1970 that construction of Walt Disney World had actually been commenced and the Central Florida real estate boom hit with full impact that this present action was filed by Chapman. In the interim period of time the record shows that Chapman accepted the terms of the mortgage and payments made thereon.
Notwithstanding the above-recited matters, the trial judge found breach of duty even if the broker-employer relationship did not exist. In this connection, the trial court found that that relationship at one time did exist between the parties. As Curtis concedes, this finding is not assailable. We submit that the record definitely shows that at the time the contract of sale was executed Chapman was advised of the fact that Curtis was acting as a principal in the transaction. The trial judge found, however:
IRRESPECTIVE OF ANY TECHNICAL BROKERAGE RELATIONSHIP, DEFENDANT CURTIS, AS A REGISTERED REAL ESTATE BROKER, OWED PLAINTIFFS THE DUTY OF ACTING HONESTLY AND FAIRLY IN HIS DEALINGS WITH THEM.
It is agreed that there is an abundance of case law supporting this finding, as well as learned treatises, but, the question is, is the finding supported by competent evidence. We cannot find wherein Curtis failed to act honestly and fairly with Chapman. Here the transaction from its conception to its consummation was negotiated between Curtis and Chapman. Both parties, as stated, are real estate brokers and must be considered as being fully aware of the duties, responsibilities and ethics of their time-honored profession.
Lest it be overlooked, Chapman cannot be thought of as a stranger to this area of the state. It would be naivete to reach such a conclusion. The record shows that he has an interest in over 600 acres of land in the immediate vicinity of the subject property  433 acres on the west side of U.S. Highway 27, which lands had been in possession of Chapman and relatives for approximately 20 years, about 180 acres of which have been used for citrus purposes and, additionally, had an interest in approximately 178 acres immediately across the highway and west of the 433 acres. The latter tract was purchased by the partnership, of which Chapman was a member, in 1962. Furthermore, Chapman is a real estate broker and a housing consultant accredited by the U.S. Department of Housing and Urban Development.
The remedy of rescission requires that the reliance be justified. A representee who has expert knowledge of the general subject matter, and is peculiarly fitted and qualified, by knowledge and experience, to evaluate that which he sees and appreciate the obvious falsity of the claimed representation does not have the right to rely on a representation. Puget Sound National Bank v. McMahon, 53 Wash.2d 51, 330 P.2d 559 (1958).
In view of this fact, perhaps standing alone, it is difficult to reconcile the trial judge's finding that Curtis had all the alleged information and withheld it from Chapman, who is depicted as being completely ignorant and innocent of the land market in this area.
Chapman asserts that he believed that Curtis purchased the land for grove purposes. The testimony of the parties and the documentary evidence indicate to us that the land in issue was purchased for speculative purposes and it is not unreasonable *221 for us to conclude that Chapman was aware of this fact. We point out again that the contract documents provide that Chapman was to retain possession of the fruit under the conditions provided in the contract.
Now, it is true that during the negotiations for the purchase of this land Curtis had hoped that State Road # 530 would be the entrance to Walt Disney World and that he attempted to ascertain this information. He had a dream and some five years later it became a reality. This case appears to be a classic example of the old cliche that hindsight is better than foresight. As Chapman testified on cross-examination:
... If I had fully realized the effect of Disney World on that property, I would not have sold it. If I had had adequate information to make a judgment, we  I would not have been a party to its sale.
Chapman further testified that in 1968 he attempted to make inquiries of the State Road Department, "... Smith, Reynolds & Hill," [sic] engineers, concerning a certain configuration taking place on the highway and he got enough conflicting stories as to what was and wasn't planned to be at a loss to understand or even if anything was definite. It appears that Chapman was negotiating an option with Humble Oil Company for a lease on some other property Chapman owned and was attempting to find out if U.S. Highway 27 would be widened and four-laned and the interchange constructed in the area. The property Chapman owned abutting U.S. Highway 27 is a relatively short distance from the intersection of U.S. Highway 27 and State Road # 530.
The case of Chisman v. Moylan, Fla. App.2d, 1958, 105 So.2d 186, is cited in the final judgment and by both parties in their briefs. We agree with that decision and the cases cited therein. We are impressed by the language in the court's opinion where it is held:
... Neither a judgment nor a decree, however, should be entered in favor of an employer or a principal who complains that he has been injured by breach of duty by a broker where the complaint appears to be founded on conjecture, suspicion, or speculation. (105 So.2d 186, 189).
Chapman's testimony amounts to just that, for he does not testify or prove by other witnesses or documentary evidence that Curtis had specific inside information that State Road # 530 would either be four-laned or become the entrance to Walt Disney World. His testimony in this regard is based purely on conjecture, suspicion, or speculation.
In the light of our decision we do not think it necessary to discuss the remaining points raised by Curtis on appeal. We do mention that it is quite apparent from the record that cancellation and rescission, returning the parties to their original position, due to the passage of time, intervening probable equities, would make a just settlement of the transaction a very difficult, if not an impossible task.
Lastly, but importantly, the court truly expresses its appreciation to the trial judge and attorneys representing the parties litigant for the exemplary manner in which this case was litigated in the trial court. The briefs of counsel filed in support of their respective contentions were superbly presented and oral argument to this court was presented most ably and was of invaluable assistance.
Accordingly, for the reasons above stated, the order appealed from is reversed and the trial court directed to enter judgment in favor of Curtis. Each party is required to bear his own cost and expenses incurred in this litigation.
Reversed.
*222 MANN, C.J., concurs in the judgment.
HOBSON, J., concurs.

ON PETITION FOR REHEARING
BOARDMAN, Judge.
Denied. See Judge Wiggington's opinion on rehearing in State ex rel. Jaytex Realty Company v. Green, Fla.App.1st, 1958, 105 So.2d 817.
MANN, C.J., and HOBSQN, J., concur.
NOTES
[1] This court reversed the trial court's holding that a bond was required in connection with the lis pendens because plaintiffs/appellees were claiming against their own deed stating that the claim was "founded on a duly recorded instrument." 244 So.2d 154. After trial, final judgment in favor of appellees was entered and appellants filed several post-trial motions, including a motion to vacate and set aside judgment for want of indispensible parties, which the trial court granted. This holding resulted in another interlocutory appeal wherein this court held that L & N Grove, Inc., was not dissolved until August 20, 1970, that the cause did not abate, and that the trustees of the corporation were not indispensible parties and ordered the trial court to reinstate the final judgment and to hear and rule on the pending post-decretal motions. 265 So.2d 725. Thereafter, final judgment was entered and the post-decretal motions denied.