SCHEB, Acting Chief Judge.
Appellant Peter Dykeman challenges a final judgment awarding the appellees a broker’s commission for obtaining a buyer who was ready, willing, and able to purchase Dykeman’s property. We think the trial court misperceived the legal effect of the evidence, and accordingly, we reverse. In view of our disposition, appellees’ cross-appeal is moot.
On July 29, 1986, Dykeman executed a written exclusive right of sale listing agreement with Luten Properties, Inc., for the sale of property known as Carol’s Seafood and Steak House in St. Petersburg. On August 21, Venture Realty Group, Inc., acting as a subagent for Luten, presented Dykeman with F.C. Wild’s written offer of $575,000 to purchase the business and land. When Dykeman rejected the offer, Wild increased it to $595,000 as Dykeman requested.
On August 26, Joanne Medleau, a broker/salesperson employed by Venture, presented Dykeman with a marketing fee and commission agreement along with an offer from Wild to purchase the property for $595,000. When Dykeman refused to accept the offer until his attorney had an opportunity to review the papers, Medleau suggested that the phrase “Contingent upon seller’s attorney’s approval of all documents” be inserted in the sales contract. With this modification, Dykeman signed both the listing agreement and the sales contract.
Later that day, Dykeman met with his attorney, Kenneth Easley. Easley indicated that he had a number of objections which included omission of Fourth Street Restaurant Corp., the owner and operator of the restaurant, as a party to the contract; failure to allocate the purchase price between the real estate and the business; failure to provide for any proration of license fees; inclusion of an incorrect seller’s representation regarding outstanding liens against the business property; requirement that the land be conveyed by warranty deed in the absence of financial terms of sale providing sufficient cash to pay off Dykeman’s agreement for deed; and failure to provide a contingency conditioning seller’s obligations on his obtaining consent for the transfer of Dykeman’s interest under an existing agreement for deed from the contract vendor.
On September 2, Dykeman, his accountant, Wild, and Medleau reviewed the busi *786 ness’s records. On September 5, Medleau secured execution by Dykeman and Wild of the transfer application forms necessary to transfer the beverage license.
On September 10, Easley told Medleau of his objections. Medleau suggested that all parties wait for the preparation of the closing documents. Easley did not agree and indicated instead that new contracts were required.
Late on the afternoon of September 11, Medleau delivered a set of proposed closing documents to Easley’s office. The next morning Easley learned that the closing had been scheduled for 9:00 p.m. that evening. During a conference that day with Dykeman, Easley advised him that the documents were unacceptable because they did not cure his previously expressed objections and raised issues never previously discussed by the parties.
These new issues included a provision in the bill of sale, note, and security agreement whereby the assets of the business were to be sold to, and a note and security agreement received from, a newly formed corporation known as F.C. Wild Corporation. Other issues were embodied in the proposed “Asset Purchase Agreement”: an agreement not to compete, provisions relating to specific performance of the contract by the buyers, certain closing fees and expenses to which Dykeman had not previously agreed and a provision releasing Venture from liability. Having determined that the documents were unacceptable, Easley advised Dykeman that he was not bound by the agreement with Wild.
Dykeman notified Medleau that in the absence of contracts and closing documents acceptable to his attorney, he would not attend the closing that evening. No new documents were produced, and therefore, the sale did not close. When Dykeman did not respond to additional closing dates scheduled by Venture and Luten, they demanded payment of a commission on October 7.
On October 31, Venture and Luten filed suit against Dykeman and Fourth Street claiming a commission was due them under the listing agreement. A nonjury trial was held. At the conclusion of Venture and Luten's evidence, Dykeman and Fourth Street moved for a directed verdict. The court granted the motion as to Fourth Street but denied it as to Dykeman. At the conclusion of the case, the court rendered a final judgment on June 29,1987, in favor of Venture and Luten for $45,000 commission plus prejudgment interest, court costs, and attorney’s fees. Dykeman and Fourth Street filed this appeal. Venture and Lu-ten cross-appealed.
Basic to resolution of this case is the proposition that a broker earns a commission upon presenting the seller with a buyer who is ready, willing, and able to purchase the property according to the terms stated in the listing agreement or a buyer who is willing to purchase on different terms which the seller will accept. Taylor v. Dorsey, 155 Fla. 305, 19 So.2d 876 (1944); Abel v. First Federal Savings and Loan Assoc, of Manatee County, 199 So.2d 295 (Fla. 2d DCA 1967); Mid-Florida Realty Associates, Inc. v. Truesdell, 454 So.2d 747 (Fla. 5th DCA 1984). The parties do not dispute that Venture and Luten failed to present Dykeman with a buyer amenable to the original terms of the listing agreement. The second offer included several additional provisions not dealt with in the listing agreement. In addition, the proposed closing documents included a noncompetitive covenant wherein Dykeman would be restricted from competing for a period of three years within three miles of the restaurant. Therefore, the question becomes whether Wild’s offer produced by Venture and Luten was acceptable to Dykeman.
At the outset, we think it significant to note that the disputed contingency clause requiring approval of all documents by Dykeman’s attorney was added at the suggestion of Venture and Luten. Moreover, the brokers do not challenge Dykeman’s statement that this clause was added because he was under pressure from the brokers to sign quickly, even though he had made it clear that he did not wish to obligate himself without his attorney’s advice. We think it clear that Dykeman would not *787 have signed the contract absent the contingency allowing approval by his attorney.
Before Dykeman’s duty to close the deal ripened, the condition inserted in his acceptance of Wild’s offer had to be substantially satisfied. We interpret this to mean that Easley’s failure to approve the documents had to be based on rational, reasonable objections and not petty deficiencies that would not deter a willing seller. The reasonableness of the seller’s objections is important where, as here, a broker’s listing contract is conditioned on the consummation of the contract. If a seller acts arbitrarily to prevent full performance, he waives that condition regarding his duty to pay the broker a commission. See Mark v. Hahn, 177 So.2d 5 (Fla.1965).
On appeal, Venture and Luten contend that Wild’s offer was acceptable to Dyke-man but immediately before the scheduled closing on September 12, he had a change of heart and regretted that he had signed the contract. Therefore, they argue that Dykeman attempted to avoid his obligations to Wild, Venture, and Luten by claiming that the documents did not meet with Easley’s approval, a condition precedent to Dykeman’s duty to complete the sale.
As evidence of Dykeman’s alleged stonewalling, Venture and Luten point to his failure to sign a written memorandum prepared by Easley designed to correct certain problems he had with the documents. Dykeman denied that such a memorandum was prepared. Irrespective of this, it was neither Dykeman’s nor Easley’s responsibility to prepare a new contract incorporating their proposed revisions. Rather, it was Venture and Luten’s duty to present documentation to comply with the contingency approval clause. Only then could the brokers be said to have produced a buyer who was ready, willing, and able to purchase on terms satisfactory to Dyke-man.
From an examination of the record, we cannot conclude that Dykeman’s actions were arbitrary or Easley’s objections unreasonable. Easley advised Venture and Luten of his initial objections, and Dyke-man notified them that the documents delivered on September 11 did not correct and, in fact, gave rise to additional objections by Easley. Because Venture and Lu-ten failed to provide Dykeman with a revised contract acceptable to Easley, Wild’s offer remained unaccepted through the duration of the listing period. Accordingly, Venture and Luten were not entitled to a broker’s commission.
In view of our holding, Venture and Lu-ten’s cross-appeal contending that Fourth Street was also liable for a broker’s commission is moot.
Reversed and remanded for entry of judgment in favor of Dykeman.
DANAHY and FRANK, JJ., concur.