548 So.2d 784 (1989)
Jean B. YOUNG, Appellant,
v.
Richard J. FIELD and Elizabeth Field, His Wife, Appellees.
No. 87-3258.
District Court of Appeal of Florida, Fourth District.
September 6, 1989.
*785 Marjorie Gadarian Graham of Marjorie Gadarian Graham, P.A., West Palm Beach, for appellant.
Kevin J. Carroll of Davis, Hoy & Diamond, West Palm Beach, for appellees.
ESQUIROZ, MARGARITA, Associate Judge.
Jean B. Young, a real estate broker, filed an action against Richard and Elizabeth Field to recover a broker's commission under a listing agreement for the sale of the Fields' property. The trial court granted the Fields' motion for summary judgment, and Mrs. Young appeals. We affirm.
The Fields entered into a listing agreement giving Mrs. Young the exclusive right to sell the Fields' oceanfront Perdido Key property "for the price of $270,000 or any other price and terms acceptable to Seller", and providing that if Mrs. Young "secures a buyer ready, willing and able to purchase said property at this price or at any price and terms acceptable to Seller, Seller agrees to pay Broker a fee of 8% of gross sales price from first monies received at close of sale." Either the sellers or the broker could terminate the agreement at any time by giving the other thirty days written notice.
Pursuant to this termination clause, the Fields sent written notice to Mrs. Young informing her that they were exercising their option to terminate the listing agreement. Within the ensuing thirty days, Mrs. Young presented to the Fields three separate sales contracts containing varying terms at the price agreed to. In each contract, Mrs. Young, the broker, was the proposed purchaser.[1] The Fields declined each of Mrs. Young's offers, and no sale was ever consummated to either Mrs. Young or to any other purchaser.
In granting the Fields' motion for summary judgment, the trial court made a specific finding of fact that Mrs. Young disclosed to her principals that she was the purchaser of the property under the proposed contracts, and further that she attempted no subterfuge in this regard. The trial court found that Mrs. Young "did not violate her fiduciary duty in that she offered the full amount of the contract to the principals" and that there was no bad faith involved in the offer. Nonetheless, the court disavowed Mrs. Young's claim for a commission because the Fields had not consented to the sale.
This factual scenario presents the following issue for review: Is a broker entitled to a commission where he offers to purchase his principal's property at his price and fully discloses his status as purchaser, but the principal refuses to sell? For the reasons that follow, we hold that a broker is not entitled to a commission under these circumstances, and affirm the trial court's order entering final summary judgment in favor of the sellers.[2]
To preserve and insure the fiduciary relationship between broker and seller, a broker may neither purchase from nor sell to his principal unless the principal expressly assents thereto or acquiesces in such a course, with full knowledge of all the facts and circumstances. Vining v. Smith, 343 So.2d 871, 872 (Fla. 3d DCA 1977), cert. denied, 355 So.2d 518 (Fla. 1978); Asher v. Gene Snyder & Co., 311 So.2d 155, 156 (Fla. 3d DCA 1975); Kline v. Pyms Suchman Real Estate Co., 303 So.2d 401, *786 404 (Fla. 3d DCA 1974), cert. denied, 314 So.2d 588 (Fla. 1975); Chisman v. Moylan, 105 So.2d 186, 189 (Fla. 2d DCA 1958). Neither may a broker act as agent for both the seller and the purchaser in the same transaction unless both the seller and the purchaser know of such dual representation and agree to it. Stinson v. Teelin Real Estate, Inc., 370 So.2d 1205 (Fla. 1st DCA 1979). Thus, Florida courts elevate the level of duty of a broker to that of an attorney or a banker in that the broker's relation to the public exacts the highest degree of trust and confidence. MacGregor v. Florida Real Estate Commission, 99 So.2d 709, 711 (Fla. 1958); Ahern v. Florida Real Estate Commission ex rel. O'Kelley, 149 Fla. 706, 6 So.2d 857, 858 (1942); Chisman v. Moylan, 105 So.2d 186, 189 (Fla. 2d DCA 1958).[3]
Florida courts have not hesitated to fashion relief in favor of the principal in classic cases of breach of fiduciary duty by the broker, such as where the broker has violated the duty of full disclosure to his principal by concealing or misrepresenting facts. See Quinn v. Phipps, 93 Fla. 805, 113 So. 419 (1927); Vining v. Smith, 343 So.2d 871 (Fla. 3d DCA 1977); Kline v. Pyms Suchman Real Estate Company, 303 So.2d 401 (Fla. 3d DCA 1974); Hershey v. Keyes Co., 209 So.2d 240 (Fla. 3d DCA), cert. denied, 214 So.2d 623 (Fla. 1968).[4] Ordinarily, if the broker fails to make full disclosure of his status as purchaser to his principal, he forfeits his commission and must account to him for profits. See Chisman v. Moylan, 105 So.2d at 188. See also Kline v. Pyms Suchman Real Estate Co., 303 So.2d at 405. Cf. Ehringer v. Brookfield and Associates, Inc., 415 So.2d 774 (Fla. 5th DCA 1982).[5]
The more unique situation is exemplified by the instant case, where the broker claims her commission on the strength of her faithful disclosure of her status as purchaser to her principal. Mrs. Young argues that the broker does not forfeit the commission where there is no breach of fiduciary duty or bad faith conduct on the broker's part.[6] Under such circumstances, she claims, the seller can always withhold *787 consent to sell, but is obligated to pay a commission if the offer comports with the listing agreement.
We decline to adopt such a view. Although no Florida case has ever directly answered this question, other sister courts have dishonored the broker's claim for a commission where he has attempted to purchase the principal's property but the principal has refused to sell to him, regardless of the existence of bad faith or breach of fiduciary duty on the broker's part. Crowley v. Rorvig, 61 Mont. 245, 203 P. 496 (1921); Real Estate Exchange & Investors, Inc. v. Tongue, 17 N.C. App. 575, 194 S.E.2d 873 (N.C. Ct. App. 1973). Cf. Parchman & Oyler Co. v. Crawford, 68 Ohio App.2d 109, 427 N.E.2d 546 (Ohio Ct. App. 1980).[7]
In Tongue, the broker's complaint for recovery of a commission alleged that the seller refused to sell him the property. The court held that the general rule barring an agent from purchasing his principal's property absent full disclosure and assent by the principal "applies although no positive fraud or unfairness may have been practiced by the agent and although he purchases the property `at a fair market price, or at the price set by the principal, and even though he was unable to sell to anyone else at the price fixed.'" Real Estate Exchange & Investors, Inc. v. Tongue, 194 S.E.2d at 874. Therefore, the broker was not entitled to a commission for attempting to negotiate a sale which the seller was not legally bound to approve.
In Crowley, the seller declined to sign contracts already executed by the agents under their "authority to sell," contemplating a sale to the agents' wives and other purchasers. In holding that such a contract is voidable at the principal's option and rejecting the agent's claim for a commission, the court quoted from early precedent adopting persuasive policy considerations in support of the following view:
The moment [the agent] ceases to be the representative of his employer, and places himself in a position towards his principal where his interests may come in conflict with those of his principal, no matter how fair his conduct may be in the particular transaction, that moment he ceases to be that which his service requires, and his duty to his principal demands. He is no longer the agent, but an umpire. He ceases to be the champion of one of the contestants in the game of bargain, and sets himself up as a judge to decide between his principal and himself what is just and fair... . In such cases the courts do not stop to inquire whether the agent has obtained an advantage or not, or whether his conduct has been fraudulent or not. When the fact is established that he has attempted to assume two distinct and opposite characters in the same transaction, in one of which he acted for himself, and in the other pretended to act for another person, and to have secured for each the same measure of advantage that would have been obtained if each had been represented by a disinterested and loyal representative, they do not pause to speculate concerning the merits of the transaction ... but they at once pronounce the transaction void because it is against public policy. The salutary object of the principle is not to compel restitution in case fraud has been committed, or an unjust advantage gained, but to elevate the agent to a position where he cannot be tempted to betray his principal. Under a less stringent rule, fraud might be committed, or unfair advantage taken, and yet, owing to the imperfections of the best of human institutions, the injured party be unable either to discover it, or prove it in such a manner as to entitle him to redress. To guard against this uncertainty, all possible temptation is removed, and the prohibition against the agent acting in a dual character is made broad enough to cover all his transactions.
Crowley v. Rorvig, 203 P. at 497, quoting from Porter v. Woodruff, 36 N.J. Eq. 174, 179-80 (1882).
*788 We believe that Crowley and Tongue voice the salutary view, and we adopt their reasoning. Under a different rule, the broker could theoretically become the purchaser of the principal's property, and at the eleventh hour of a listing agreement's term, effectively force a sale by stripping the seller of all but two options: (1) to sell to the broker at bottom contract price and terms, or (2) pay him his full commission on a sale of his property that never took place. Needless to say, such a result does not comport with logic, reason or justice. It is surely inconsistent with the underlying goal of the broker-seller marriage, whose `raison d'etre' from a practical standpoint is to secure, all around, the best possible deal in the transaction, at the highest price and best terms obtainable. It is also openly at odds with policy objectives. As wisely quoted by Judge Glickstein in Bush v. Palermo Realty, 443 So.2d 104 (Fla. 4th DCA 1983):
Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate... . Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court.
Id. at 106 (quoting from Justice Cardozo's opinion in Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928)).
We thus hold that the Fields had a lawful right to refuse to sell the property to Mrs. Young. We also hold that Mrs. Young did not have a lawful right to effect a sale to herself, and that she is not entitled to a commission for attempting to negotiate a sale which the sellers were not legally bound to consummate.[8] We therefore affirm the order granting the Fields' motion for summary judgment.
GLICKSTEIN and POLEN, JJ., concur.
NOTES
[1] In at least one contract, Mrs. Young was to apply for a mortgage of approximately $162,000 from a lending institution of her choice, and to come up with the difference of the $270,000 purchase price in cash at closing. The other two offers made by Mrs. Young contemplated financing by the sellers. Each contract called for a $25,000 earnest money deposit.
[2] The issue of whether a broker is entitled to a commission where the seller acquiesces in or consents to sell to the broker is not before us, and we do not address it.
[3] The nature of this fiduciary duty has been described in Florida as follows:

[The real estate broker] is the agent of his principal in every sense, and, when that relation is undertaken, a fiduciary relation is created which bars the agent from becoming interested in the business or property antagonistic to his principal without his knowledge or consent. Every man, in other words, to whom a business is intrusted by another, has a trust to perform; and every man is a trustee whose business is to advise concerning or to operate the business of another.
Chisman v. Moylan, 105 So.2d at 189, quoting from Chief Justice Terrell's opinion in Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 425 (1927) (emphasis added).
[4] The duty of full disclosure is generally defined as the duty to inform the principal of any circumstance that might reasonably be expected to influence the complete loyalty of the agent to his principal's interests, or that might reasonably be expected to influence his principal in the negotiation. MacGregor v. Florida Real Estate Commission, 99 So.2d at 712; Kline v. Pyms Suchman Real Estate Company, 303 So.2d at 404. To this end, the principal must enjoy "a free and unhampered choice of approval, or disapproval" before he may ever be considered to have effectively authorized the conduct of the agent. MacGregor v. Florida Real Estate Commission, 99 So.2d at 713.
[5] Like results are reached elsewhere. See, e.g., Property House, Inc. v. Kelley, 68 Hawaii 371, 715 P.2d 805 (1986); Batson v. Strehlow, 68 Cal.2d 662, 68 Cal. Rptr. 589, 441 P.2d 101 (Cal. 1968); Girard v. Myers, 39 Wash. App. 577, 694 P.2d 678 (Wash. Ct. App. 1985); Ross v. Perelli, 13 Wash. App. 944, 538 P.2d 834 (Wash. Ct. App. 1975); Jarvis v. O'Brien, 147 Cal. App.2d 758, 305 P.2d 961 (Cal.Ct.App. 1957).
[6] The trial court found no breach of fiduciary duty or bad faith conduct by Mrs. Young. We do not disturb these findings. However, we caution that generally speaking, where the broker assumes the dual role of agent and buyer, the existence of bad faith or unfair advantage may be difficult to detect. "[F]raud might be committed, or unfair advantage taken, and yet, owing to the imperfections of the best of human institutions, the injured party be unable either to discover it, or prove it in such a manner as to entitle him to redress." Crowley v. Rorvig, 61 Mont. 245, 203 P. 496, 497 (1921). This may be particularly true when applied to the agent's effort to obtain the highest possible price and best terms in the sale, that is, "to have secured for each the same measure of advantage that would have been obtained if each had been represented by a disinterested and loyal representative ..." Id. 203 P. at 497.
[7] In Parchman, the court reached the opposite result since the sellers completed the sale knowing of the dual agency and assented thereto.
[8] Policy considerations aside, and speaking strictly from the standpoint of performance of the contract terms, it is apparent that Mrs. Young did not qualify as a "buyer ready, willing and able to purchase." To be a ready, willing and able buyer, the prospective purchaser must have the "legal capacity to purchase." 7 Fla. Jur.2d Brokers § 88, at 336, citing 12 Am.Jur.2d Brokers § 184. Legal incapacity to purchase may arise from a lack of any requisite consent to the transaction. 12 C.J.S. Brokers § 154, at 470. Cf. Fourth Street Restaurant v. Venture Realty Group, Inc., 533 So.2d 784 (Fla. 2d DCA 1988), rev. denied, 541 So.2d 1173 (Fla. 1989) (consent of seller's attorney lacking); Belisle v. Barry, 253 Mass. 475, 149 N.E. 121 (1925) (consent of buyer's wife lacking). Since the principal's consent is a legal prerequisite to the broker's purchase and since the Fields lawfully withheld their consent, it follows that Mrs. Young is not entitled to a commission since she failed to "secure a buyer ready, willing and able to purchase" as the contract terms require and as that term has been judicially defined, and she therefore failed to perform her end of the bargain.