PETERSON, Judge.
Robert W. Torbron appeals a final judgment of foreclosure in favor of Ben Cam-pen. Campen also appeals a judgment in Torbron’s favor following a jury verdict finding Campen in breach of a Real Estate Auction Agreement. We reverse the judgment of foreclosure and affirm the judgment against Campen.
Torbron owned a 183-acre parcel of undeveloped and unsubdivided land in Putnam County encumbered only by a mortgage having a balance of $77,000 due December 3, 1989. Inexperienced in the development and marketing of real estate, he was introduced to Campen by a broker. While discussing the use of an auction to market the property, Torbron told Campen that the mortgage and all auction expenses, including commissions, had to be satisfied from the sales proceeds. Campen expeditiously contacted the holder of the mortgage, but the record does not reflect the outcome of the contact. Torbron and Campen entered into a “Real Estate Auction Agreement” (Agreement) on July 23, 1986. The Agreement, Campen’s preprint-ed form with spaces for handwritten entries, provided, inter alia, that Campen would:
(1) Offer the land for sale at auction and provide all advertising and facilities;
(2) Offer the land for sale in whole or subdivided parts in such manner as Campen determined would net Torbron a high bid price;
(3) Inform prospective purchasers at the auction of the procedure to be followed, and provide information and rules, terms and conditions, and maps;
(4) Handle the execution of contracts with purchasers, collect and deposit all binder deposits, and coordinate, supervise, and participate to the extent reasonably required to complete the closing of the purchase contracts;
(5) Arrange to have all closings of purchase contracts take place at the office of Campen’s attorney who would prepare all necessary documents to transfer title;
(6) Have authority to negotiate with any governmental agencies regarding the property;
(7) Have an “exclusive right of sale listing” from the date of execution to ninety days after the auction;
(8) Receive a second mortgage on the property to secure cash advances and earned commissions; and
(9) Negotiate with mortgagees on behalf of Torbron any terms that Campen felt would be advantageous, and to cancel the Agreement if Campen determined he was unable to perform and conduct an auction of the property in a satisfactory manner.
Pursuant to the provision designated as (8) above, Torbron delivered to Campen a $40,000 promissory note and a second mortgage dated the same day as the Agreement. The note bore interest at the rate of eighteen percent per annum from the date of execution even though commissions were not yet earned and no cash advances had been made by that date.
Campen began preparing for the auction sale which was set for November 5, 1986. With a surprising degree of informality, he mailed a letter on September 22, 1986, to the Putnam County Commission, notifying it that he represented Torbron and that the land was being subdivided into sixteen parcels of ten acres or more. He enclosed a proposed plat and invited the commissioners to call if they had any questions. The commission responded by letter on October 29, 1986, disapproving the subdivision and indicating that two ordinances would be violated — a subdivision ordinance and a drainage ordinance. The county director of planning and zoning and the county attorney were then contacted by Campen, his agent or attorney. These county officials *167 then opined orally that, while the drainage ordinance could be applicable, the subdivision ordinance probably was not. The county attorney specifically advised Cam-pen’s attorney that the county wanted some notice given to prospective purchasers that the county would require compliance with its drainage ordinance before any improvements could be made on the parcels.
Campen did not inform Torbron or the potential bidders of the county commission’s written opposition to the subdivision, nor of the subsequent contacts with the county officials. The brochure prepared by Campen included a picture of a portion of the property under which was printed “ready for developing.” The brochure also announced that the land would be sold at absolute auction. When asked whether he had notified potential bidders of the county drainage requirements, he testified at trial that he thought he had “announced to the people about the zoning and that any necessary permits that would be required, plans, and so forth would have to be submitted to the county or any governmental agency that would have jurisdiction.” In an earlier deposition, he had testified, “I’m not sure whether I did or didn’t.”
The auction date arrived, and Campen, making no specific remarks to those present about the county commission’s attitude expressed in writing, proceeded to take bids on the sixteen parcels. Also unresolved and unannounced to prospective bidders was the potential but very real problem with releasing sixteen parcels of land from the first and, now, the second mortgages in the event the proceeds of sale were inadequate to pay off the mortgages. Campen had no contingency plan for the latter development. He later testified that, although Torbron indicated to him it was necessary that the proceeds be adequate to pay all auction expenses and the first mortgage, Campen “felt comfortable that we could obtain what was owed on the property and expenses.” When asked about informing Torbron of the problems with Putnam County, he testified:
I don’t know that I did.
There again, it wasn’t a problem. It got cleared up. And Mr. Torbron hired me to take care of the sale, from whenever he employed me to having the auction, and then to facilitate to the best of my ability to closing, which I did.
The inevitable result — what can go wrong, will go wrong — was not readily apparent at the conclusion of the auction. All appeared well. Bernita Armstrong had bid successfully on eight of the sixteen lots and had executed two contracts for a total purchase price of $111,923.78. The gross proceeds totaled $176,649.87, and Torbron would have netted in excess of $70,000 from the sale. After the sale, however, Armstrong visited the county authorities and learned of the county’s concern about drainage when development occurs. She consequently refused to close.
Without the proceeds of the sale to Armstrong, the auction proceeds were insufficient even to pay the first mortgage. Cam-pen, who was now without a purchaser for eight of the sixteen lots, obtained two alternative offers through private solicitation on December 29, 1986, and January 13, 1987. The first, an offer from a corporation in which Campen was a principal, would have netted Torbron $6,000, and the second, an offer from a third party, would have netted $16,000. Both were rejected by Torbron because of a substantial reduction in net proceeds.
Campen then filed a complaint to foreclose on the $40,000 second mortgage. Torbron denied the allegations of Campen’s complaint, asserted affirmative defenses of failure of consideration and breach of contract, and counterclaimed for breach of contract. Torbron also joined Armstrong as a third party defendant, alleging breach of contract. Campen then claimed damages against Armstrong for his expenses and commission. He alleged that she was responsible for the failure of the entire auction since she failed to close, thus leaving Torbron with inadequate funds to pay Campen’s commission and expenses. Only then did Torbron learn of Campen’s previously undisclosed communications with the county, and he dismissed his claim against *168 Armstrong. Campen’s claim against Armstrong was denied by summary judgment. A jury awarded Torbron $20,000 on his breach of contract counterclaim against Campen, after which the trial court entered judgment of foreclosure in favor of Cam-pen.
Campen argues that no evidence was presented showing that he breached the terms of the Agreement and therefore the trial court committed error by failing to direct a verdict in his favor. Torbron argues that the error was in granting judgment of foreclosure after the jury found that Campen breached the terms of the Agreement.
It is undisputed that, pursuant to the Agreement, Campen took charge of marketing and managing the auction sale of Torbron’s property from the time of the Agreement to the time that Armstrong refused to proceed with her purchase. Cam-pen determined the sizes of the parcels sold. Torbron did not obstruct Campen’s efforts in any way and was not consulted about the possible adverse effects that could result from the county’s position or if the proceeds were insufficient to pay the expenses and the two mortgages. Campen had the specific right under the Agreement to contact the first mortgagee to attempt to work out partial release provisions advantageous to Torbron. He also had the specific right to cancel the Agreement if he was not satisfied with his attempt. The absence of release provisions in this transaction was an invitation to disaster. Since the auction was absolute, the proceeds from the sale could have been insufficient to satisfy the first mortgage. To proceed to sale without a release from the first mortgagee was a gamble, and Campen should have informed Torbron that the latter needed to make a business decision whether or not to gamble.
Campen himself was willing to make the gamble, but he must bear the consequences. Before meeting Campen, Tor-bron owned a valuable parcel of property with a mortgage due in approximately three years. The record does not reflect any existing urgency to sell. After Cam-pen performed supposedly valuable services uncontrolled by Torbron, Torbron was faced with the potential loss of his property to the very person upon whom he relied to market the property, pay off the mortgages, and provide him with a profit.
Failure of consideration is an affirmative defense and is the neglect, refusal, or failure of one of the parties to perform or furnish the consideration agreed upon. Holm v. Woodworth, 271 So.2d 167 (Fla. 4th DCA 1972). The consideration for the promissory note secured by the second mortgage delivered to Campen was for services and expenses to be earned and incurred in performance of the Agreement; it was not for an antecedent obligation that excuses present consideration under the Uniform Commercial Code. § 673.408, Fla. Stat. (1989). In order to provide consideration for the note, Campen had to perform under the Agreement. The Agreement prepared by Campen required him to undertake more responsibility than simply banging the gavel at auction. The Agreement required him not only to offer the land for sale at auction, but also to perform various duties in connection with that sale and, although not specifically stated in the Agreement, at all times to observe the ethical standards of a Florida real estate broker. The very matters which the broker undertook, to-wit: to act as the broker, to negotiate with government agencies, to negotiate advantageous terms with the first mortgagee, and to offer the property in parcels, resulted in the complete failure of the auction which he was engaged to conduct.
First, in failing to disclose to Torbron the problem expressed by Putnam County Commissioners, Campen failed to make full, fair, and prompt disclosure to his employer of all facts within his knowledge which were or may have been material to the matter in connection with which he was employed and which might have influenced the employer in the conduct of the transaction. See Hershey v. Keyes Co., 209 So.2d 240 (Fla. 3d DCA 1968), cert. denied, 214 So.2d 623 (Fla.1968). Without considering whether representation before a county *169 commission to subdivide lands is a proper activity of a Florida real estate broker, it is, at the very least, an act the performance of which by a lawyer would most probably create professional liability if the failure to disclose the county commission’s opposition to subdividing of the lands caused a client to sustain damages.
Second, a seller is under a duty to disclose facts of which he is aware that materially affect the value of real property. Johnson v. Davis, 480 So.2d 625 (Fla.1985). Such a duty is equally applicable to real estate brokers. Johnson v. Davis, 449 So.2d 344, 350 n. 1 (Fla. 3d DCA 1984), approved, 480 So.2d 625 (Fla.1985). Torbron’s expert witness testified that the additional expense of engineering a drainage plan can substantially affect the value of property. “Florida courts have not hesitated to fashion relief in favor of the principal in classic cases of breach of fiduciary duty of the broker, such as where the broker has violated the duty of full disclosure to his principal by concealing or misrepresenting facts.” Young v. Field, 548 So.2d 784, 786 (Fla. 4th DCA 1989); see also Kline v. Pyms Suchman Real Estate Co., 303 So.2d 401, 404 (Fla. 3d DCA 1974), cert. denied, 314 So.2d 588 (Fla.1975).
Finally, with the knowledge that, absent an arrangement for releases, the first mortgage had to be satisfied from the proceeds of the sale, proceeding with an absolute auction was a gamble undertaken by Campen alone that resulted in harm to his employer. The only concern and requirement voiced by his unsophisticated employer before entering into the Agreement was that, after Campen’s services were completed, all expenses and the mortgage must be paid from the proceeds. His employer was willing to gamble only on the profits he might realize from an auction, not from a solicitation for a private sale conducted after Campen’s actions put Torbron between a rock and a hard place. If Campen was unable to obtain satisfactory release provisions from the first mortgagee, he had the right to escape performance under the Agreement, but this right should have been exercised before conducting the auction and complicating Torbron’s title to the land.
Campen seems to believe that his furnishing of two alternative purchasers should have been accepted by Torbron to escape the predicament in which he found himself. Torbron was not obligated to sell his property to either of the prospective purchasers substituted for Armstrong because Campen had been engaged to offer the property for sale at public auction, not by private sale. While it is recognized that Campen had the exclusive right of sale under the Agreement for a period of ninety days following the auction, the Agreement failed to provide a pre-established selling price that was acceptable to Torbron, thus giving him the right of rejection. Additionally, we view the provision as one which allowed Campen to claim a commission in the event Torbron sold his property without Campen’s procuring the sale during the contract period. Further, the rejection of the offer to purchase by the corporation in which Campen was a principal was proper even if a pre-established price had been included in the Agreement. An employer is not obligated to sell his property to his real estate broker whether or not true identity of the broker-buyer is revealed and the pre-established price is met. Young v. Field, supra; see also Kline v. Pyms Suchman Real Estate, supra.
We do recognize the position that a representative of an unsophisticated individual sometimes enters in carrying out duties. In order to get the job done, the representative must often carry out tasks and eliminate obstacles that should be performed by the employer- who lacks the ability to do so and who does not employ professionals such as lawyers and engineers in subdividing, designing drainage plans, and dealing with administrative agencies. It is sometimes difficult for the representative to determine the importance of those matters and problems that should be communicated to the employer along the way. There is no evidence that Campen intentionally withheld information from Torbron or bidders at the auction. He may have believed that matters with the Putnam County Board of *170 Commissioners had been resolved. A chance did exist that complete revelation to Torbron and the bidders of the county’s position with respect to drainage would have depressed or eliminated bids. This could have been most harmful to Torbron if Campen had resolved the problems, but at least Torbron’s presale knowledge would allow him to participate in that decision. Forgetting for a moment Campen’s failure to obtain partial releases from the first mortgage or some other resolution of that encumbrance, perhaps Campen’s next most critical error was in publicly announcing the auction sale before resolving the county ordinance problems and documenting a resolution with the county. Campen had little time to resolve the problem since he had already scheduled the sale, and the county’s letter objecting to the subdivision was received only a week before the scheduled auction.
We agree with the trial court that the evidence was sufficient to submit to the jury the question of whether Campen breached the contract. We also agree with Campen’s argument that the trial court was not bound, by the jury’s findings in Torbron’s counterclaim, to deny the foreclosure. The jury was not requested to determine whether there was a failure of consideration, and, therefore, the issue was not the same as it may have been in Sundale Associates, Ltd. v. Southeast Bank, N.A., 471 So.2d 100 (Fla. 3d DCA 1985). A breach of contract may or may not be so extensive that it frustrates the entire consideration for the contract. In this instance, Campen’s actions resulted in placing Torbron in an uncertain and much worse financial position than when he entered the Agreement, to-wit: an unsuccessful auction, inability to close any of the auction sales, less time to market the property before the first mortgage payment was due, potential claims by successful bidders of the other eight lots purchased at an absolute auction, and litigation costs. The result of Campen’s action was a failure of consideration and requires reversal of the judgment of foreclosure.
AFFIRMED in part; REVERSED in part.
HARRIS, J., concurs.
GRIFFIN, J., dissents with opinion.