**Afton M. COON et al.,
Plaintiffs-Appellants,**

v.

**CHARLES W. BLIVEN & COMPANY,
INC., et al., Defendants-Appellees.**

**No. 75–1306.**

United States Court of Appeals,
Fifth Circuit.

June 23, 1976.

Arthur Roth, Charlotte J. Barkan, Miami, Fla., for plaintiffs-appellants.

Richard C. Waller, Miami, Beach, Fla., for Fronapfel.

Horace H. Bente, pro se.

Shutts & Bowen, Miami, Fla., for White, and others.

Thomas H. Anderson, Karl V. Hart, Miami, Fla., for Herbert & Hazel White.

Before TUTTLE, AINSWORTH and CLARK, Circuit Judges.

TUTTLE, Circuit Judge:

This is a diversity case arising out of the purchase of a yacht, the "NEW HORIZON," by appellants Afton and Vera Coon, a retired couple from Alaska. Following their acquisition of this vessel in Florida, appellants discovered its condition to be such as to require extensive and costly repairs to enable it to make the return trip to

Alaska. They then instituted the instant suit for fraudulent misrepresentation against the "NEW HORIZON"'s previous owners, the Whites, against Charles W. Bliven & Co., the yacht brokerage firm which arranged the sale of the vessel, and against Horace Bente, the Bliven and Co. employee with whom appellants had dealt. In addition, appellants sued the marine surveyor, Joseph Fronapfel, who had inspected the yacht and certified it to be in satisfactory condition, for negligence.

Following extensive pretrial discovery proceedings and hearings, the district court granted summary judgment in favor of defendants Bliven & Co., Bente, and the Whites, but found that there were issues of fact as to defendant Fronapfel's negligence in conducting the marine survey of the "NEW HORIZON," and consequently denied Fronapfel's motion for summary judgment, ultimately setting the trial of that case for early July, 1974. When counsel for appellants failed to answer the calendar call on the appointed day, the district court dismissed the case for failure to prosecute with reasonable diligence. The Coons have appealed from the district court's grant of summary judgment as to the Whites, Bente and Bliven and Co., and from its dismissal of the suit against Fronapfel for failure to prosecute. Following a brief summary of the relevant facts, we deal with each of these actions by the district court in turn.

Appellants are a retired couple from Alaska, who traveled to Ft. Lauderdale, Florida in May 1972, to look for a boat to take back with them to Alaska. They selected Bliven & Co., a yacht brokerage firm, from an ad in a yachting magazine, and went to Bliven's local office to inquire about finding a suitable vessel to purchase. There they met appellee Bente, who shortly thereafter took them to see the "NEW HORIZON," owned by appellees Herbert and Hazel White. Some discussion ensued concerning the purpose for which the Coons were buying a boat, and the general condition of the "NEW HORIZON," which Mr. White assured appellants was sound. Back at the Bliven & Co. office, Mr. Coon told

Bente they could not offer more than $45,000 for the vessel. Bente advised the Coons to make an offer for $45,000, giving a check for $4,500 as a deposit, and making the ultimate purchase contingent on a marine survey satisfactory to the Coons.

On May 18, 1972, the Coons executed an "Offer to Purchase and Deposit Receipt," which stated, *inter alia*, that the offer was for the vessel " 'where is' and 'as is' free and clear of all liens and encumbrances and is subject to a survey to be made by me to my satisfaction by myself and/or my agent." Furthermore, the agreement provided, "I also understand that Charles W. Bliven & Co. has offered me this vessel on behalf of the owners in good faith, but cannot guarantee the accuracy of such information and that I will instruct my agents to check such details as I desire validated." Appellee White countersigned this document in acceptance of the offer.

At the Coons' request, Bente then procured the services of appellee Fronapfel to conduct a trial run and marine survey of the "NEW HORIZON" prior to consummation of the sale. Fronapfel conducted a trial run of the vessel, with appellants on board, and surveyed the boat both in and out of the water. He prepared and submitted a written report, including a list of exceptions, for the Coons, but generally recommended the vessel for purchase. At this point, appellants apparently became somewhat concerned about their financial ability to afford whatever repairs would be needed. It is clear from the record, for example, that at one point during the time at which Fronapfel was conducting the drydock portion of his survey at a local marine shipyard, one of the assistant yard supervisors was present and gave an estimate of what it would cost to repair the ship's cap railing, which was deteriorating from rust and dry rot at several places. In Coon's presence, the shipyard assistant estimated it would cost $100 per linear foot, or about $13,000, to sandblast, treat, and replace the entire cap rail.

Fronapfel assured appellants, however, that this particular shipyard's repair costs

were usually high, and that they could probably arrange for repairs within their budget, either by going to a smaller shipyard or by contracting out the work to an independent carpenter. After the Coons continued to express doubts to Bente, however, he went to the Whites, who lowered their asking price to $43,000. Bente reported this to the Coons and told them that he knew of someone who would take care of the repairs for a fixed price. Bente then brought the Coons together with a Felino Rodriguez, who looked the boat over and contracted to fix certain specified items for $2,600. At an unspecified date after that, the Coons accepted the new purchase price of $43,000, paying the balance of the money due after signing the contract with Rodriguez.

Once started on the repair work, Rodriguez discovered that the railing could not be patched; the rust and dry rot were so extensive that the whole rail had to be replaced. Furthermore, the hull was in extremely bad repair, and the gas tank showed extensive signs of leakage. Rodriguez informed the Coons he could not complete the contract for what he had estimated, and they released him from it. They then had the vessel surveyed at a local shipyard, resulting in an estimate of approximately $37,000 to make the needed repairs. Appellants then instituted this suit for damages for negligence by Fronapfel and misrepresentation by the other parties.

*Herbert and Hazel White.*

In their motion for summary judgment below, the Whites asserted that assuming *arguendo* that there were misrepresentations as to the condition of the vessel, as a matter of law, appellants did not "justifiably rely" on any representations of the sellers but instead conducted their own investigation of the yacht's condition. Appellants' contentions to the contrary notwith-

standing,[1] we find that Florida law is quite clear on this point. The Supreme Court of Florida has stated:

"If after a representation of fact, however positive, the party to whom it was made institutes an inquiry for himself, has recourse to the proper means of obtaining information, and actually learns the real facts, he cannot claim to have relied upon the misrepresentation and to have been misled by it. . . . The same result must plainly follow when, after the representation, the party receiving it has given to him a sufficient opportunity of examining into the real facts, when his attention is directed to the sources of information, and he commences or purports, or professes to commence, an investigation. The plainest motives of expediency and of justice require that he should be charged with all the knowledge which he might have obtained had he pursued the inquiry to the end with diligence and completeness."

*Hirschman v. Hodges, O'Hara & Russell Co.,* 59 Fla. 517, 51 So. 550, 554 (1910). *Accord, Hancoy Holding Co. v. Lambright,* 101 Fla. 128, 133 So. 631, 634 (1931); *see also W. & S. Job & Company v. Heidritter Lumber Company,* 255 F. 311 (2nd Cir. 1918).

Here the Coons hired a marine surveyor who conducted a survey and trial run of the vessel and provided them with a written report of his findings. We have examined the record carefully and have found no evidence of any material representations concerning the vessel by the Whites following appellants' receipt of the survey, and hence it is clear, under the legal principles cited above and the facts of the case with respect to the Whites, that the district court did not err in granting summary judgment for them. Moreover, this conclusion holds true with respect to appellants' allegations of conspiracy and breach of fi-

---

1. Appellants' reliance on *Sherman v. Hallbauer,* 455 F.2d 1236 (5th Cir. 1972), is misplaced. In *Sherman,* this Court held only that the district court had erred in granting the defendant surveyor's motion for summary judgment in light of the fact that the plaintiffs had pleaded facts sufficient to establish a contractual relationship between themselves and the surveyor, as was required for recovery in a negligence action against a surveyor under Florida law.

duciary duty by the Whites to them; the record simply does not contain any evidence whatsoever to support either of these charges.

### Horace H. Bente and Charles W. Bliven & Co.

Appellee Horace Bente is employed by the corporate appellee Charles W. Bliven & Co., and, as the district court noted, corporate liability exists only insofar as appellee Bente is liable. Based upon the following undisputed facts, this Court finds that the district court did not err in granting summary judgment as to either Bente or Bliven & Co.

■ The record clearly shows without dispute that Bente did not know the Whites prior to the time he first showed the Coons the "NEW HORIZON;" that he had never seen the yacht before; and that he did not know of any defects in the vessel when he showed the boat to appellants. Furthermore, the contract into which appellants entered with the Whites specifically stated that Charles W. Bliven & Co. could not guarantee the accuracy of any information regarding the vessel passed on to appellants, and provided that appellants would make their own independent investigations of such details as they might desire validated. These uncontradicted facts are more than sufficient to justify a grant of summary judgment for Bente and the company on the misrepresentation count.

■ Appellants' remaining allegation against Bente concerns his failure to return their deposit pursuant to the terms of the contract when they visited him in his office and told him they did not think they would go through with the deal after reading the survey. There is no evidence in the record that a specific demand was made for the return of the deposit at this point. We have examined the record closely and are in agreement with the district court that, even assuming *arguendo* that such a demand for the return of the deposit was made, there is no evidence that Bente refused to return the money—he simply stated that he would have to check with the Whites. Further-

more, appellants' subsequent actions in accepting a lower purchase price from the Whites would appear to constitute a waiver of whatever rights they had at that point.

### Joseph B. Fronapfel.

■ This Court is also in agreement with the district court's ruling that there remains an issue of fact as to the negligence of defendant Fronapfel, the marine surveyor hired by appellants to assess the yacht's condition prior to purchase. We find, however, for the reasons below, that the district court erred in its eventual dismissal of the suit against Fronapfel on July 10, 1974, for failure to prosecute.

■ According to appellants' attorney's explanation of the facts, which has not been disputed, he was out of town trying another case on the morning on which calendar call for the suit against Fronapfel had been scheduled, but had arranged with another attorney in his office to answer the call for him. A series of telephone calls from the judge's chambers to appellants' attorney's office concerning alterations in the docketing of the case for calendar call followed, with the final call informing him that the Fronapfel suit was set second on the calendar for Monday morning, July 8th. On that morning, appellants' lawyer was, according to him, prepared for trial, and waited in his office for more precise instructions by phone concerning the time the case would be called for trial. Upon calling the court late Monday afternoon, counsel was notified that the case had been dismissed when no one had answered calendar call for appellants.

The circumstances described above, we feel, do not warrant the remedy of dismissal for failure to prosecute. Here there was no deliberate disobedience or misunderstanding of a clear instruction, but rather simply some confusion as to instructions over the timing of the calendar call for that day. This Court has expressed the view that dismissal of an action for failure to prosecute with reasonable diligence is action which is "too harsh except in extreme

circumstances." *Flaksa v. Little River Marine Constr. Co.*, 389 F.2d 885 (5th Cir. 1968). While dismissal is a discretionary matter, it has usually been approved "only in the face of a clear record of delay or contumacious conduct by the plaintiff," *Durham v. Florida Const. Ry. Co.*, 385 F.2d 366, 368 (5th Cir. 1967), and district courts should first resort to lesser sanctions. *Flaksa, supra*, at 888. In light of these guidelines, this Court finds that under the circumstances here, the district court erred in dismissing appellants' suit against Fronapfel.

The district court's grant of summary judgment against appellees Herbert and Hazel White, Horace H. Bente, and Charles W. Bliven & Co. is therefore AFFIRMED. The court's dismissal of appellants' action against appellee Fronapfel, for failure to prosecute with reasonable diligence, however, is REVERSED, and the case remanded for further proceedings not inconsistent with this opinion.