Robert CZARNECKI, Plaintiff,

v.

Laurence ROLLER, Woods and Oviatt, Inc., Merrill–Stevens Dry Dock Co., Jack Reynolds, Inc., New Horizons Marine Surveyors, Defendants.

No. 88–1667–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Nov. 15, 1989.

Alex F. Lankford, III, Mobile, Ala., Michael R. Karcher, Miami, Fla., for plaintiff.

Rae M. Crowe, Mobile, Ala., G. Morton Good, Richard J. McAlpin, Miami, Fla., Jack Reynolds, Sunrise, Fla., Roger L. Shaffer, Ft. Lauderdale, Fla., for defendants.

MEMORANDUM OPINION; ORDER GRANTING IN PART AND DENYING IN PART MERRILL–STEVENS DRY DOCK COMPANY'S MOTION FOR SUMMARY JUDGMENT; AND ORDER GRANTING LAURENCE ROLLER'S MOTION FOR PARTIAL SUMMARY JUDGMENT

SPELLMAN, District Judge.

THIS CAUSE comes before the Court upon Defendant Merrill–Stevens Dry Dock Company's [hereinafter referred to as "Merrill–Stevens"] Motion for Summary Judgment filed with this Court on May 30, 1989, and Defendant Laurence Roller's Motion for Partial Summary Judgment filed with this Court on September 8, 1989.

Merrill–Stevens seeks summary judgment as to Count I [fraudulent misrepresentation]; Count II [fraudulent concealment]; Count III [conspiracy as it pertains to fraudulent misrepresentation and fraudulent concealment]; Count IV [negligence]; and Count V [breach of fiduciary duty].[1] Upon review of Merrill–Stevens' Motion for Summary Judgment, Plaintiff's Memoran-

dum in Opposition, and Merrill–Stevens' Reply thereto, it is the opinion of this Court that partial summary judgment should be entered in favor of Merrill–Stevens.

Laurence Roller seeks summary judgment as to Count I; Count III [conspiracy as it pertains to fraudulent misrepresentation]; and Count VII [breach of implied warranty of merchantability and breach of warranty for a particular purpose]. Upon careful review of Roller's Motion for Partial Summary Judgment, Plaintiff's Memorandum in Opposition, and Roller's Reply thereto, it is the opinion of this Court that Roller is entitled to summary judgment as to Counts I, III and VII.[2]

## BACKGROUND

This is a diversity action arising out of the purchase of a Bertram yacht, the M/V IMPULSE/XANADU,[3] by Plaintiff Robert Czarnecki. The controversy between the parties revolves around a prior sinking or submersion of the yacht which Plaintiff learned of subsequent to the sale.[4] Plain-

---

1. While Merrill–Stevens' Motion for Summary Judgment is directed towards all counts of the Complaint, its brief in support of its Motion for Summary Judgment fails to address Plaintiff's claim for negligence and breach of fiduciary duty.

2. By Order dated August 7, 1989, this Court granted partial summary judgment as to Counts I and III in favor of Roller's co-Defendant, Woods and Oviatt, Inc. The very same issues of fact and law now raised in Roller's Motion for Partial Summary Judgment were also raised in Woods and Oviatt's Motion. Accordingly, based on the findings of fact and conclusions of law made by this Court in said Order, and for the reasons more fully set forth below, this Court finds that Roller is entitled to partial summary judgment.

3. At the time of its sinking and at the time of Plaintiff's purchase, the yacht was named XANADU. Plaintiff changed the name to IMPULSE after completing the sale.

4. According to the affidavits of Michael Myles and Richard Carmack, the M/V IMPULSE/XANADU sank in September of 1985 in Soldiers Creek, a saltwater inlet located in Baldwin County, Alabama, near the municipality of Orange Beach, Alabama. The yacht took on water through a broken off fathometer transducer and sank to the bottom. The water level was slightly above the deck level in the main

salon covering the yacht's twin diesel engines, generator and auxiliary equipment. The recessed cabin was flooded to approximately three feet above the deck. The yacht was subsequently raised and hauled out of the water at Orange Beach Marina in Orange Beach, Alabama. The submersion of the yacht caused extensive damage which required repairs estimated as high as $171,000.00.

In November of 1986, Roller purchased the yacht from its owner, German Town Savings Bank. Roller was aware of the prior sinking of the yacht and had the yacht cleaned, the engines reconditioned, and made some minor repairs. The yacht was subsequently transported to South Florida where Roller listed the yacht for sale with Woods and Oviatt, Inc., a yacht brokerage company in Fort Lauderdale, Florida.

After completing a survey and sea trials of the yacht, the yacht was sold to Plaintiff. The yacht thereafter spent several days at Merrill–Stevens' repair yard undergoing various repairs totally approximately $20,000.00. Plaintiff and his family subsequently transported the yacht to Mobile, Alabama expecting to travel up the Tombigbee waterway to their home in Pennsylvania. During the course of the voyage, Plaintiff experienced a number of mechanical difficulties with the yacht and put in at Dog River Marina in Mobile to have repair work performed. It was at Dog River Marina where Plaintiff was informed for the first time by

tiff instituted this action against Roller, the previous owner of the M/V IMPULSE/XANADU; Woods and Oviatt, Inc., and Merrill–Stevens, yacht brokerage firms; and against Jack Reynolds, Inc., and New Horizons, independent marine surveyors.

## STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A ruling on a summary judgment motion should be guided by the substantive evidentiary standard of proof that would apply at the trial on the merits. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is mandated against a party who, after adequate time for discovery and upon motion, fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the non-moving party and to allow the non-moving party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Thrasher v. State Farm Fire & Cas. Co.*, 734 F.2d 637, 638 (11th Cir.1984). If there is no genuine issue of material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Trustees of Plumbers Local No. 519 Health and Welfare Trust Fund v. Garcia*, 677 F.Supp. 1554, 1556 (S.D.Fla.1988). However, be-

Marina personnel that the M/V IMPULSE/XANADU had previously sank near Orange Beach,

cause summary judgment is an extreme remedy, it should not be granted unless the moving party has established the right to judgment beyond controversy.

## FACTS

This Court finds that there is no genuine issue of material fact as to the following:

1. Woods and Oviatt, Inc., listed the yacht M/V IMPULSE/XANADU for sale on behalf of Laurence Roller.

2. Plaintiff approached Merrill–Stevens requesting assistance in the purchase of a pleasure yacht.

3. Merrill–Stevens located the M/V IMPULSE/XANADU for Plaintiff.

4. Merrill–Stevens showed Plaintiff the M/V IMPULSE/XANADU.

5. Plaintiff negotiated the purchase of the yacht through Scott Hasselbring, a broker with Merrill–Stevens, and Roller negotiated through Jeff Stanley, a broker with Woods and Oviatt.

6. Plaintiff hired independent surveyors, Jack Reynolds, Inc., and New Horizons Marine Surveyors, to survey the M/V IMPULSE/XANADU.

7. Jack Reynolds and New Horizons, as independent surveyors, inspected the hull and machinery of the yacht and submitted survey reports to Plaintiff.

8. No evidence of sinking was specifically looked for by the surveyors.

9. According to these survey reports, neither Jack Reynolds nor New Horizons detected any evidence that the yacht had sank or had been partially submerged, nor did the reports suggest that the yacht had previously been submerged.

10. Plaintiff submitted a bid to purchase the yacht.

11. Negotiations followed and an agreement upon a sale price was reached.

12. Plaintiff's contract to purchase the yacht was contingent upon a successful sea trial and survey.

Alabama.

13. Plaintiff or his agents, subsequently caused sea trials to be performed on the yacht.

14. The yacht performed to the satisfaction of both Plaintiff and the marine surveyors.

15. Plaintiff personally inspected the yacht, and based on his independent inspections, the inspections by the independent marine surveyors, and successful sea trials, found the yacht to be acceptable and completed the transaction.

16. Laurence Roller made no misrepresentations to Plaintiff regarding the history or condition of the yacht.

17. Plaintiff's decision to purchase the yacht was not made in reliance on any representation made by Merrill–Stevens, Laurence Roller, or Roller's broker, Woods and Oviatt, regarding the history or condition of the vessel.

## MERRILL–STEVENS' MOTION FOR SUMMARY JUDGMENT

### Count I—Fraudulent Misrepresentation

■ Plaintiff is unable to establish a prima facie case of fraudulent misrepresentation against Merrill–Stevens. To establish a cause of action for fraudulent misrepresentation, Plaintiff must demonstrate that: (1) Merrill–Stevens knowingly made false statements concerning material facts; (2) that Plaintiff relied on these statements; and (3) that Plaintiff was damaged as a result of relying upon these false representations. *Hauben v. Harmon*, 605 F.2d 920 (5th Cir.1979); *Stowell v. Ted S. Finkel Inv. Servs., Inc.*, 641 F.2d 323 (5th Cir.), *reh'g denied*, 647 F.2d 1123 (1981).[5]

There is a genuine issue of material fact whether Merrill–Stevens knowingly made false representations regarding the history or condition of the M/V IMPULSE/XANADU. Plaintiff adduces evidence that during the course of negotiations, Jeff Stanley, a broker employed with Woods and Oviatt, advised Merrill–Stevens' broker, Scott Hasselbring, of the yacht's prior sinking.[6] Stanley purportedly learned this through conversations with Michael Myles at Orange Beach Marina.[7]

While the M/V IMPULSE/XANADU was undergoing sea trials, Plaintiff purportedly overheard Stanley and Hasselbring discussing the sinking of a boat. Plaintiff approached them and asked whether they were discussing the M/V IMPULSE/XANADU and whether the M/V IMPULSE/XANADU had ever sunk before. Hasselbring denied that the M/V IMPULSE/XANADU had previously sunk. Plaintiff described the conversation as follows:

> A. Basically just what I just said, that I heard rumor that the boat had sunk, and I didn't believe it.
>
> Stanley Deposition, p. 22, 24 (emphasis added).

**7.** The substance of their conversation was as follows:

> Sometime in the Spring of 1986, I received a call from a boat broker named Jeff Stanley with Woods & Oviatt in Fort Lauderdale. He told me that he understood that Orange Beach Marine had done work on a Bertram boat that they were brokering called the XANADU owned by Laurence Roller. *I told Mr. Stanley that the vessel had been sunk* and that Orange Beach Marine had nothing to do with any engine work on the vessel and that the vessel had been basically "patched up" by Roller in the yard at Orange Beach Marina. Our conversation was very brief since I did not want to have anything to do with this boat, however, *I definitely told Mr. Stanley that the boat had been sunk.*
>
> Affidavit of Michael Myles, p. 2–3 (emphasis added).

**5.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**6.** Stanley's deposition reads in pertinent part:
> Q. What did you tell Mr. Hasselbring about the boat, other than the asking price?
> A. *I told him that there had been a rumor that the boat had been sunk.*
> Q. You heard that rumor?
> A. Yes, I had.
> Q. Who did you hear that rumor from?
> A. I don't know.
> When a person has his boat listed with hundreds of different brokers, you know, it could have come from anyone.
> It was just talk in the business.
> * * * * * *
> Q. Do you recall specifically what your discussions were with Mr. Hasselbring about, about this rumor about the boat previously sinking?

Prior to the purchase of the vessel, at the Merrill–Stevens Boat Yard, Fort Lauderdale, Florida, I overheard Scott Hasselbring, Merrill–Stevens, and Jeff Stanley, Woods and Oviatt, discussing the sinking of a boat. *I asked both men whether the vessel XANADU had ever sunk. Scott Hasselbring stated no, that they were talking about another boat.* This statement was made in the presence of Jeff Stanley who said nothing. I only asked whether my boat had previously been sunk when I overheard the conversation and simply wished to assure myself that my boat had never sunk.

Plaintiff Interrogatory Response No. 1 (emphasis added).

Plaintiff also refers to the deposition of Scott Hasselbring, wherein he states unequivocally that Plaintiff asked him directly whether the M/V IMPULSE/XANADU had ever sank. The deposition reads in pertinent part:

Q: Do you recall if Mr. Czarnecki ever asked you, prior to the phone call of May 2, 1988, had the boat ever sunk?

A: Yes, I do.

    \*     \*     \*     \*     \*     \*

Q: Do you recall specifically what Mr. Czarnecki asked you?

A: Yes, I do.

Q: What was that?

A: *Had this boat been sunk.*

Q. Do you recall your answer to him?

A. I did not make an answer, as I have no knowledge that it did; but the surveyor who had inspected the vessel would be in a position to render more of an opinion. That why he's there.

Hasselbring Deposition, pp. 39–40 (emphasis added).

Merrill–Stevens asserts that its yacht broker, Scott Hasselbring, never represented that the M/V IMPULSE/XANADU had not previously been sunk or submerged. It does, however, concede that Plaintiff approached Hasselbring and Jeff Stanley after overhearing them converse about the sinking of a vessel. But Merrill–Stevens contends that Plaintiff merely inquired whether they were referring to the M/V IMPULSE/XANADU, whereupon he was told they were referring to a different vessel. Merrill–Stevens bases this contention on Plaintiff's deposition which reads in pertinent part:

A. No, I only brought that [the sinking] up once, I think that I can remember.

Q. Where was that?

A. That was before we went out on the sea trial, while the boat was sitting on land, and I overheard Scott Hasselbring and Jeff Stanley talking, and I heard them say something about a boat being sunk, and *I asked Scott Hasselbring, "You are not talking about this boat being sunk, are you."*

*He said "No we are talking about a boat that sunk either on the Gulf Coast or West Coast,"* and when he said that I said, "Good" and I dropped it.

Czarnecki Deposition, p. 37 (emphasis added).

Merrill–Stevens contends that based on Plaintiff's deposition, it is clear that Merrill–Stevens, nor its broker, Scott Hasselbring, knowingly made false representations regarding the history or condition of the M/V IMPULSE/XANADU. Rather, according to Merrill–Stevens, Plaintiff was merely advised that the conversation which he had overheard did not relate to his yacht. This Court must disagree with Merrill–Stevens' interpretation of Hasselbring's response to Plaintiff's inquiry.

A reasonable interpretation of Hasselbring's statements is that his response, at a minimum, implicitly denied that the M/V IMPULSE/XANADU had previously sank. Hence, genuine issues of material fact exist as to whether Plaintiff asked Hasselbring whether the M/V IMPULSE/XANADU had previously sank, and if so, whether Hasselbring explicitly or implicitly denied that it previously sank.

Even though this Court finds that genuine issues of material fact exist as to whether Merrill–Stevens knowingly made false representations regarding the sinking of the M/V IMPULSE/XANDAU, Plaintiff fails to demonstrate justifiable reliance upon these alleged misrepresentations.

Detrimental reliance is an essential element in stating a cause of action for fraudulent misrepresentations. *Fote v. Reitano*, 46 So.2d 891, 892 (Fla.1950). Failure to demonstrate justifiable and detrimental reliance upon the alleged misrepresentations constitutes sufficient basis for entering summary judgment against Plaintiff. *Id.*

In the instant action the evidence conclusively demonstrates that Plaintiff did not rely upon representations made by Merrill–Stevens' broker, Scott Hasselbring, regarding the history or condition of the M/V IMPULSE/XANADU. Facts adduced in support of Merrill–Stevens' Motion for Summary Judgment demonstrate that Plaintiff based his decision to purchase the M/V IMPULSE/XANADU upon his own inspections, sea trials, and acceptable marine surveys.

The purchase contract for the yacht signed by Plaintiff stated that the broker could not guarantee the accuracy of any information regarding the yacht passed on by the sellers, and that the buyer would make his own independent investigation of such details as he might desire.[8] Plaintiff understood precisely the investigation contemplated in the purchase agreement and availed himself of the opportunity to obtain surveys and to conduct sea trials. Any damages which he may have suffered were clearly the result of his own exercise of business judgment following the surveys and sea trials and not the result of any independent representation of the yacht's history or condition made by Hasselbring.

In actions such as this, where the decision to engage in a transaction is the result of independent inspection and evaluation, rather than an alleged misrepresentation, no claim for fraudulent misrepresentation will lie. *H & W Enter., Inc. v. Ellis*, 467 So.2d 790, 793 (1st DCA 1985) (maker of a fraudulent misrepresentation is not liable where the decision to engage in a transaction is the result of independent investigation by another).

Addressing this issue under facts identical to those of the instant case, the former Fifth Circuit held in *Coon v. Charles W. Bliven & Co*, 534 F.2d 44 (5th Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 491, 50 L.Ed.2d 588 (1976), that where a buyer had secured the services of an independent marine surveyor who examined the vessel and submitted his report to the buyer, neither the broker nor the seller were liable for any misrepresentations regarding the condition of the vessel.

The Restatement (Second) of Torts (1976) specifically addresses situations where an individual's decision to engage in a transaction is based upon independent investigation made by him or her. Section 547 of the Restatement provides in pertinent part:

Recipient Relying on His Own Investigation

(1) Except as stated in subsection (2), the maker of a fraudulent misrepresentation is not liable to another whose decision to engage in the transaction that the representation was intended to induce is not caused by his belief in the truth of the representation but is the result of an independent investigation made by him.

(2) The fact that the recipient of a fraudulent misrepresentation is relying upon his own investigation does not relieve the maker from liability if he by false statement, or otherwise intentionally prevents the investigation from being effective.

With regards to subsection (2), this Court finds that any misrepresentation which Merrill–Stevens may have made regarding the previous sinking of the M/V IMPULSE/XANADU would not have prevented Plaintiff from thoroughly and effectively surveying the yacht. Plaintiff has not claimed, nor is there evidence, that Merrill–Stevens prevented Plaintiff from inquiring from anyone else about this fact, nor is there evidence that Merrill–Stevens prevented Plaintiff from personally inspecting or surveying the yacht. At most, Plaintiff can claim that knowledge of the prior sink-

---

**8.** The contract provided that:

The Broker offers details of the vessel in good faith but cannot guarantee the accuracy of this information nor warrant the condition of the vessel. It is understood and agreed that the Purchaser may instruct his agents or surveyors to investigate such details as the Purchaser desires validated.

ing would have sparked a more thorough investigation of the yacht. Notwithstanding this fact, this Court finds that neither Plaintiff nor the independent surveyors which he employed were prevented from thoroughly and effectively inspecting the yacht. Accordingly, Merrill–Stevens is entitled to summary judgment as to Plaintiff's claim for fraudulent misrepresentation on the basis, that in purchasing the M/V IMPULSE/XANADU, Plaintiff could not have justifiably relied on any material misrepresentations made by Merrill–Stevens.

### Count II—Fraudulent Concealment

[2, 3] Summary judgment must be denied as to Count II, for genuine issues of material fact exist regarding Merrill–Stevens' knowledge of the yacht's history and condition. To establish a cause of action for fraudulent concealment, Plaintiff must demonstrate the existence of a fiduciary relationship or superior knowledge on the part of Merrill–Stevens. *Ramel v. Chasebrook Constr. Co.*, 135 So.2d 876, 882 (Fla. 2d DCA 1962). Plaintiff has sufficiently alleged that Merrill–Stevens owed a fiduciary duty to Plaintiff, and has further demonstrated that a genuine issue of material fact exists whether Merrill–Stevens had superior knowledge regarding the yacht's history and condition.

The law in Florida is that when a broker undertakes to act on behalf of a buyer he stands as a fiduciary to this client. This relationship demands the utmost good faith and full disclosure. *Bush v. Palermo Realty, Inc.*, 443 So.2d 104 (Fla. 4th DCA 1983); *Van Woy v. Willis*, 153 Fla. 189, 14 So.2d 185 (Fla.1943); and *Chisman v. Moylan*, 105 So.2d 186 (Fla. 2d DCA 1958). In *Chisman*, the District Court of Appeal stated that:

> The Supreme Court of Florida has indicated the high standard demanded of a broker as being comparable to that of a lawyer or banker in that his relationship to the public exacts the highest degree of trust and confidence.... Because of the close relationship which calls for trust and confidence, the broker must act in good faith and with loyalty towards his principal.... A broker has imposed upon him during the period of such relationship with his principal the legal obligation to inform with fairness, promptness, and completeness, concerning all facts within his knowledge which are or may be material to the situation in connection with which he is employed.

105 So.2d at 189.

It is the opinion of this Court that Merrill–Stevens acted in a fiduciary capacity, such that it was incumbent upon Merrill–Stevens to act in utmost good faith and at all times make full disclosure of any matters that might have adversely affected Plaintiff as its principal. Merrill–Stevens gladly accepted its position as Plaintiff's broker and will now be held to the standard set forth above.

Secondly, this Court finds that a genuine issue of material facts exists whether Merrill–Stevens had superior knowledge regarding the history and condition of the M/V IMPULSE/XANADU, specifically, whether the yacht had previously sank or been submerged. Superior knowledge requires that one be aware of a fact or condition that is not discernible by ordinary observation. Statements of a party having exclusive or superior knowledge may be regarded as statements of fact although they would be considered opinion if the parties were dealing on equal terms. *Ramel*, 135 So.2d at 882. Both Plaintiff and Merrill–Stevens have presented conflicting evidence as to whether Merrill–Stevens had knowledge superior to that of Plaintiff regarding the sinking of the M/V IMPULSE/XANADU.

Plaintiff has adduced the deposition of Michael Myles, formerly with the Orange Beach Marina, wherein he states that he informed Jeff Stanley, prior to the sale of the M/V IMPULSE/XANADU, that this yacht had been sunk.[9] In addition, Jeff Stanley stated unequivocally in his deposition that, prior to the sale, he discussed the previous sinking of the M/V IM-

---

9. Affidavit of Michael Myles, p. 3.

PULSE/XANADU with Scott Hasselbring, a broker with Merrill–Stevens.[10]

Merrill–Stevens contends that Hasselbring at most heard a "rumor" that the M/V IMPULSE/XANADU had previously sank, and that Hasselbring saw absolutely no evidence to support this rumor and, in fact, was given every indication to the contrary. Merrill–Stevens asserts that Roller and Stanley advised Hasselbring prior to the purchase of the yacht that the yacht's engines had been rebuilt due to water having "gone up the exhaust." In addition, Merrill–Stevens points out that Hasselbring had not seen the yacht prior to showing it to Plaintiff and apart from the surveys and sea trials, Hasselbring was entirely dependent upon information received from the seller and his broker regarding the yacht's history and that he advised Plaintiff of this fact and helped arrange the surveys.

According to the affidavit of Earle Long,[11] a rumor or reputation in the boating industry that a vessel has previously sunk is a critical and material fact which a buyer should be aware of as it typically bears heavily upon the market value of the vessel. In fact, the reputation or rumor about the vessel may be as important as the actual sinking of the vessel in the way it affects the market value of the vessel. According to Long, this is a fact that any prudent broker should disclose to his client and is customary in the industry.

It is undisputed that the yacht itself did not exhibit the rust or corrosion which follows from a sinking, and that its appliances were not recently replaced, indicating possible earlier submersion damage. In addition, neither of the surveys reports produced by Reynolds and New Horizons contained any suggestion that the yacht had previously sank. Merrill–Stevens maintains that based on the foregoing information and condition of the yacht, Hasselbring refrained from discussing the unsubstantiated rumor that the vessel had previously sank.

Under Florida law, a failure to disclose mere possibilities cannot constitute a failure to disclose material facts sufficient to support an action for fraudulent misrepresentation. *Hauben*, 605 F.2d at 925. However, upon careful review of the record, this Court finds that there is a genuine issue of material fact as to whether Hasselbring had superior knowledge regarding the previous sinking of the yacht by way of either actual knowledge, or a reason to believe the yacht had sank, and whether he intentionally concealed this fact from Plaintiff. Accordingly, summary judgment must be denied as to Count II.

### Count III—Conspiracy

Count III states a claim against Merrill–Stevens and other Defendants, for conspiracy to conceal and misrepresent material facts. Civil conspiracy is a derivative of the underlying claims which form the basis of the conspiracy. The "gist of a civil conspiracy is not the conspiracy itself but the civil wrong which is done through the conspiracy which results in injury to the Plaintiff." *Buckner v. Lower Florida Keys Hosp. Dist.*, 403 So.2d 1025, 1027 (Fla. 3d DCA 1981). An act which does not constitute a basis for an action cannot serve the basis for a conspiracy claim. *Id.*

Inasmuch as Count I fails to state a claim against Merrill–Stevens for fraudulent misrepresentation, Count III must be dismissed to that extent. *Renpak, Inc. v. Oppenheimer*, 104 So.2d 642 (Fla. 3d DCA 1958); *Coon*, 534 F.2d 44. However, Count III states a claim for conspiracy to the extent that Count II states a cause of action against Merrill–Stevens for fraudulent concealment.

Plaintiff has adduced evidence that Stanley obtained actual knowledge of the yacht's prior sinking and discussed the question of the sinking with Hasselbring, both during the time of negotiations and on the deck of the M/V IMPULSE/XANADU during its sea trials, when they were con-

---

10. Stanley Deposition, p. 22.

11. Earle Long is president of Bluewater Yacht Sales and Service, Inc., an authorized Bertram dealer, located in Mobile, Alabama. Long has worked in the yacht sales and brokerage business for approximately seventeen years.

fronted by Plaintiff on this matter. It is therefore open to the trier of fact to infer from these circumstances that Merrill–Stevens and Woods and Oviatt had a meeting of the minds and reached an understanding that they would conceal the prior sinking from Plaintiff. This inference could be made in light of the fact that at the time Plaintiff inquired, there was a clear motive in not disrupting a deal which was about to be consummated and which would have allowed both Stanley and Hasselbring to pocket a sizeable brokerage fee.

### Count IV—Negligence

■ There is no legal basis for Plaintiff's claim for negligence against Merrill–Stevens for allegedly failing to discover that the yacht had previously sank. Plaintiff has not set forth, nor can this Court unearth, any legal basis upon which to impose on Merrill–Stevens a duty to investigate each and every item of information provided by Roller or his broker, Woods and Oviatt, regarding the yacht's condition and history. Rather, given that the surveyors' reports prepared for Plaintiff did not reveal evidence of a prior sinking, and if in fact they should have discovered high-water marks, rust, or corrosion, consistent with a sinking, then Plaintiff may have a claim against the surveyors for negligence. However, any claim for negligence against Merrill–Stevens would be misdirected. Accordingly, summary judgment must be granted as to Count IV.

### Count V—Breach of Fiduciary Duty

In light of this Court's finding that Merrill–Stevens owed a fiduciary duty to Plaintiff, and that a genuine issue of material fact exists whether it breached such duty by either knowingly making false representations regarding the prior sinking of the yacht, or by concealing this fact, Merrill–Stevens' Motion for Summary Judgment shall be denied as to Count V.

### LAURENCE ROLLER'S MOTION FOR PARTIAL SUMMARY JUDGMENT

#### Count I—Fraudulent Misrepresentation

Plaintiff is unable to establish a prima facie case of fraudulent misrepresentation against Laurence Roller. As previously stated, to establish a cause of action for fraudulent misrepresentation, Plaintiff must demonstrate that: (1) Laurence Roller knowingly made false statements concerning material facts; (2) that Plaintiff relied on these statements; and (3) that Plaintiff was damaged as a result of relying upon these false representations. *Hauben*, 605 F.2d 920; *Stowell*, 641 F.2d 323.

■ These is no genuine issue of material fact whether Laurence Roller knowingly made false representations regarding the history or condition of the M/V IMPULSE/XANADU. Facts adduced in support of Roller's Motion for Partial Summary Judgment conclusively establish that Roller made no misrepresentations to Plaintiff regarding the history or condition of the yacht. Roller directs this Court to Plaintiff's deposition which reads in pertinent part:

Q. During the course of that sea trial, did you have any conversation with Mr. Roller where nobody else was present?

A. No.

Q. Somebody else was present when you talked to Mr. Roller?

A. Yes.

Q. And *you did not talk to Mr. Roller about the sinking of the vessel at all?*

A. *No.*

Q. *Did that topic ever come up during your conversations?*

A. *No.*

\* \* \* \* \* \*

Q. *And you never mentioned anything about the sinking of the vessel with Mr. Roller on the sea trials?*

A. *No.*

\* \* \* \* \* \*

Q. You specifically recall Mr. Roller telling you about the new starters and generator during the sea trial?

A. I am not positive, but it was small talk, we were *making small talk,* nothing.

Q. Do you recall any other specifics about this small talk with Mr. Roller during the sea trial?

A. I said very little to Mr. Roller.

Q. Do you recall any specifics at all about that small talk?

A. No.

\* \* \* \* \* \*

Q. *Did Mr. Roller make any specific representations to you regarding the condition of the Xanadu?*

A. *I do not remember if he did or did not.*

Q. So you cannot say whether you relied on any representations he may have made in the purchase of the boat?

A. *I don't know what he said, to be truthful. He didn't say much, that is what I am trying to say, the man said very little.*

Czarnecki Deposition, pp. 110, 127, 128, 135–36 (emphasis added). Plaintiff fails to adduce any evidence to the contrary. Rather than attempting to demonstrate that Roller made false representations, Plaintiff restricts his argument to what Roller did not say. Accordingly, summary judgment is proper on this basis alone.

■ Even if this Court were to assume *arguendo,* that Roller did in fact misrepresent material facts to Plaintiff regarding the history or condition of the yacht, summary judgment would still be warranted based upon Plaintiff's failure to demonstrate reliance upon such misrepresentations. In confusing fraudulent misrepresentation with fraudulent concealment, Plaintiff fails to address the reliance requirement for fraudulent misrepresentation. Detrimental reliance is an essential element in stating a cause of action for fraudulent misrepresentation. *Fote,* 46 So.2d at 892. Plaintiff's failure to demonstrate justifiable and detrimental reliance upon said misrepresentations constitutes sufficient basis for entering summary judgment in favor of Roller. *Id.*

As previously stated, the evidence conclusively establishes that Plaintiff did not rely upon any misrepresentations made by Roller regarding the history or condition of the M/V IMPULSE/XANADU. As with Merrill–Stevens' Motion for Summary Judgment, facts adduced in support of Roller's Motion for Partial Summary Judgment demonstrate that Plaintiff based his decision to purchase the M/V IMPULSE/XANADU upon his own inspections, sea trials, and acceptable marine surveys. Accordingly, any damages which he may have suffered were clearly the result of his own exercise of business, and not the result of any independent representation of the yacht's history or condition made by Roller.

### Count III—Conspiracy

Count III fails to state a claim against Roller for conspiracy to misrepresent material facts. As previously stated, civil conspiracy is a derivative of the underlying claims which form the basis of the conspiracy, and an act which does not constitute a basis for an action cannot serve the basis for a conspiracy claim. *Buckner,* 403 So.2d 1025. Inasmuch as Count I fails to state a claim against Roller for fraudulent misrepresentation, Roller is entitled to partial summary judgment on Count III. *Renpak,* 104 So.2d 642; *Coon,* 534 F.2d 44.

### Count VII—Breach of Implied Warranty of Merchantability and Breach of Warranty for Fitness for a Particular Purpose

Plaintiff fails to set forth sufficient facts to support his claims for breach of implied warranty of merchantability and breach of warranty for fitness for a particular purpose.

#### implied warranty of merchantability

■ Under the Uniform Commercial Code, a claim for implied warranty of merchantability requires that the seller be a merchant. Section 672.314(1), Fla.Stat., provides in pertinent part:

Unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a *merchant* with respect to the goods of that kind. . . .

Section 672.104(1), Fla.Stat., defines a "merchant" as:

a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

Plaintiff directs this Court to Jeff Stanley's deposition wherein he states that Roller sold five boats over the three, four or five years that Stanley has known Roller.[12] However, notwithstanding this fact, this Court finds that Plaintiff has failed to adduce evidence that Roller was a "merchant" for purposes of imposing liability for breach of implied warranty of merchantability under the Commercial Code.

The concept of a "merchant" is broad, and although it is somewhat nebulous in that there is no bright line separating those who are merchants from those who are not, this Court is of the opinion that even if Roller had sold five boats during one-year's time, this alone is an insufficient basis upon which to find that Roller was a merchant. The Uniform Commercial Code provides that:

A person making an isolated sale of goods is not a "merchant" within the meaning of the full scope of this section and, thus, no warranty of merchantability would apply.

U.C.C. § 2–314 official comment 3. A person who buys a boat and sells their old boat once a year is not a merchant. *See Joyce v. Combank/Longwood,* 405 So.2d 1358 (Fla. 5th DCA 1981) (bank was held not to be merchant by having sold five repossessed cars in one year); *see also Donald v. City Nat'l Bank of Dothan,* 295 Ala. 320, 329 So.2d 92 (Ala.1976) (holding that a seller of a boat was not a merchant).

Finally, Plaintiff argues that by hiring a broker (Woods and Oviatt), Roller became a merchant. However, if this Court were to agree with this premise, then everyone who listed their house or boat for sale with a broker would be a merchant. Such a rule would render Section 672.314, Fla.Stat., meaningless. Accordingly, this Court finds that Roller was not a merchant for purposes of imposing liability for breach of implied warranty of merchantability, and that Roller is entitled to summary judgment as to this claim.

### breach of warranty for fitness for a particular purpose

Plaintiff fails to state a claim for breach of warranty for fitness for a particular purpose. The applicable Florida Statute reads in part:

Where the seller at the time of contracting has reason to know any *particular purpose* for which the goods are required *and* that the *buyer is relying on the seller's skill or judgment to select or furnish suitable goods,* there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Fla.Stat. § 672.315 (emphasis added). In *Royal Typewriter Co. v. Xerographic Supplies Corp.,* 719 F.2d 1092 (11th Cir.1983), the Eleventh Circuit Court of Appeals stated that "[a] 'particular purpose' differs from an ordinary purpose in that it envisages a specific use by the buyer which is peculiar to the nature of his business." *Id.* at 1100. The record in the instant action reveals that Plaintiff did not purchase the M/V IMPULSE/XANADU for any particular purpose other than to use it as a pleasure craft. Although after buying the yacht, Plaintiff intended to take a long trip aboard it, this amounts to nothing more than ordinary use.

Even if Plaintiff had intended to use the yacht for a "particular purpose," Plaintiff fails to adduce evidence that Roller knew of such purpose for which the yacht was going to be used, or that he relied on Roller's skill or judgment. Plaintiff's conversations with Roller were confined to "small talk"[13], and based his decision to purchase the yacht on his own inspections,

---

**12.** Stanley Deposition, pp. 7–11.

**13.** Czarnecki Deposition, p. 128.

sea trials, and acceptable marine surveys. Accordingly, for the foregoing reasons, Roller is entitled to summary judgment as to the claim for breach of warranty for fitness for a particular purpose.

Based on the above and foregoing, it is hereby

ORDERED AND ADJUDGED as follows:

1. Defendant Merrill–Stevens' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART in that

A. Summary judgment is GRANTED as to Count I.

B. Summary judgment is DENIED as to Count II.

C. Summary judgment is GRANTED IN PART and DENIED IN PART as to Count III insofar as Plaintiff states a claim for conspiracy to conceal material facts.

D. Summary judgment is GRANTED as to Count IV.

E. Summary judgment is DENIED as to Count V.

2. Summary judgment is GRANTED in favor of Laurence Roller as to:

A. Count I.

B. Count III as it pertains to fraudulent misrepresentation.

C. Count VII.

DONE AND ORDERED.