597 So.2d 913 (1992)
Helmut R. TEVINI, Lydia L. Tevini, John Hoffman and Betty M. Hoffman, Appellants/Cross Appellees,
v.
ROSCIOLI YACHT SALES, INC., Appellee/Cross Appellant, and
Elaine Grossman Yacht Documentation, Inc., Appellee.
No. 91-1397.
District Court of Appeal of Florida, Fourth District.
April 22, 1992.
Rehearing or Certification Denied June 8, 1992.
Lawrence R. Metsch of Lawrence R. Metsch, P.A., Miami, for appellants/cross-appellees.
F. Lee Bailey and Ann Fishman of Bailey, Fishman, Freeman & Ferrin, West Palm Beach, for appellee/cross-appellant.
FARMER, Judge.
We reverse the trial court's failure to direct a verdict on liability in favor of a broker, finding no relevant evidence in the record to overcome the buyers' agreement to the effect that no representation in the contract as to title was reliable. The failure of the buyers to establish their reliance on the seller's representations as to title requires that judgment be entered in favor of seller.
Appellants were the buyers of a yacht, and appellee was the broker for the sale. The purchase contract contained the following provision in paragraph 5:
5. The BROKER offers details of the VESSEL in good faith, but cannot guarantee the accuracy of this information nor warrant the condition of the VESSEL. It is understood and agreed that the PURCHASER may instruct his agents or surveyors to investigate such details as the PURCHASER desires validated.
The owner of the vessel, according to the contract, was Allmark Yacht Corporation. At the time of contracting, the buyers hired Elaine Grossman Yacht Documentation, Inc., to prepare all documentation as to title for the United States Coast Guard and for the lender in the transaction to acquire a first lien. Sometime after the closing, a third party reported the vessel as stolen, as a consequence of which the vessel was seized by the Florida Marine Patrol because *914 its hull identification number had been altered.[1]
The buyers sued the seller, the broker and the documentation firm for negligent misrepresentations, alleging that they had relied on their representations as to title. The trial court granted a summary judgment in favor of the documentation firm but denied the motion as to the broker. At trial, Helmut Tevini testified that he did the negotiating for the buyers and that the broker had specifically told him that one Allen Piche, whom he identified as Allmark's owner, owned the vessel.[2] At the close of the evidence, the broker moved for a directed verdict because of the contract disclaimer, but the motion was reserved. The jury returned a verdict in favor of the buyers but found them 50% comparatively negligent. Post trial motions were denied.
There is no ambiguity in paragraph 5 of the purchase contract. It evidences an unqualified agreement between the buyers and the broker that the buyers were not relying on the broker's belief as to where title lay. Indeed, the facts show that the buyers contemporaneously employed the documentation expert to verify title and conduct a closing with proper documentation. The facts also show that the buyers applied for financing of the purchase and that they, admittedly, relied on the lender's ascertainment of title.
The claims in suit were for negligent misrepresentation, rather than intentional fraud. Thus, there was no claim that the broker actually knew that someone else claimed title or indeed that there was any defect at all in the seller's title. Nor was there any claim by the buyers that the paragraph 5 disclaimer was, itself, procured by any representation or inducement designed to prevent them from investigating title. In fact, Tevini testified that the broker never made any representations as to who the actual owner of the vessel really was.
The claimed negligent misrepresentation on which buyers based their action against the broker was solely the broker's statement that it understood that the seller was the owner. But that is one of the very "details of the VESSEL" that the broker did not warrant and which is covered by the buyers' agreement. Moreover, the buyers could themselves  as indeed they actually did  investigate statements of title, if they desired to "validate" them.
In the face of paragraph 5 of the purchase contract, no reliance of the buyers on statements of title by the broker could possibly be justifiable. To hold otherwise is to invite contracting parties to make agreements of the kind in suit and then avoid them by simply taking the stand and swearing that they relied on some other statement. It is to encourage the use of oral testimony to change the tenor of written engagements. In keeping with our decision in Federal Deposit Insurance Corporation v. High Tech Medical Systems Inc., 574 So.2d 1121 (Fla. 4th DCA), rev. dismissed, 582 So.2d 622 (Fla. 1991), an express agreement of this kind must be vindicated.
Moreover, the buyers' independent investigation through their hired professionals negates reliance on any pre-contract statement of ownership. The evidence was unequivocal that documentation of title to vessels of this kind is invariably done by experts in the business. That is precisely why the buyers hired their own surveyor *915 and documentation expert before closing on the transaction. Both of them actually investigated and rendered reports or documents to the buyers.
Pre-closing investigations betray an absence of reliance on statements of inducement, unless the investigation itself was thwarted by conduct of the representor. That is the essential idea underlying cases such as H & W Enterprises Inc. v. Ellis, 467 So.2d 790 (Fla. 1st DCA 1985); Sherban v. Richardson, 445 So.2d 1147 (Fla. 4th DCA 1984); and Czarnecki v. Roller, 726 F. Supp. 832 (S.D.Fla. 1989).
We therefore reverse the trial court's denial of a directed verdict in favor of the broker and remand with directions to enter judgment in favor of Roscioli Yacht Sales, Inc.
REVERSED AND REMANDED WITH DIRECTIONS.
WARNER and GARRETT, JJ., concur.
NOTES
[1] Actually, two years earlier the third party had leased the vessel to the seller with an option to purchase, and when the seller stopped making payments after the sale, the third party simply reported the vessel as stolen. Seller's principal was charged with alteration of the HIN, to which he pled nolo contendere. The buyers here eventually negotiated to buy the third party's interest, as well as their lender's, for $5,000. Our buyers also then sued the third party on the grounds that he had given the seller the indicia of the power to pass good title (the seller being the manufacturer of the vessel). That suit was settled with the third party paying the buyers $5,000. It thus appears that buyers ended up with good title anyway at no additional cost to them. We do not decide this case on that apparent fact, however, preferring instead to resolve the case on whether there was any possible claim against the broker to present to the jury.
[2] By the time of trial, Allmark was dissolved and Piche had left the country. The buyers recovered a judgment against Piche for the full amount of their damages.